JOHN STUART, JOSEPH STUART, JAMES STUART, AND WILLIAM H. SCOTT, PLAINTIFFS IN ERROR, *v.* HUGH MAXWELL.

The twentieth section of the Tariff Act of 1842 provides, that on all articles manufactured from two or more materials, the duty shall be assessed at the highest rates at which any of its component parts may be chargeable.  (5 Stat. at L. 566.)

This section was not repealed by the general clause in the Tariff Act of 1846, by which all acts, and parts of acts, repugnant to the provisions of that act, (1846,) were repealed.

Consequently, where goods were entered as being manufactures of linen and cotton, it was proper to impose upon them a duty of twenty-five per cent. *ad valorem,* such being the duty imposed upon cotton articles, in Schedule D, by the Tariff Act of 1846.  (9 Stat. at L. 46.)

THIS case was brought up by writ of error, from the Circuit Court of the United States for the Southern District of New York.

The plaintiffs in error, who were plaintiffs below, sued the collector to recover moneys for duties, paid under protest, alleged to have been overcharged at the port of New York, in July, 1849.   Verdict and judgment for defendant.

The plaintiffs made entry at the custom-house of goods as being "manufactures of linen and cotton."   The appraisers reported them to be manufactures of cotton and flax.

Upon such goods collector Maxwell charged duties at the rate of 25 per cent. *ad valorem,* according to the 20th section of the act of 30th August, 1842, which enacted, " . . . . . . And on all articles manufactured from two or more materials, the duty shall be assessed at the highest rates at which any of its. component parts may be chargeable."   5 Stat. at Large, by Little & Brown, p. 566, chap. 270.

The collector applied this 20th section to Schedule D, of the act of 30th July, 1846 ; (9 Stat. at Large, by Little & Brown, p. 46, chap. 74,) by which a duty of twenty-five per cent. *ad valorem* was imposed on "cotton laces, cotton insertings, cotton trimming laces, cotton laces and braids, . . . . . . ; manufactures composed wholly of cotton, not otherwise provided for;" being so instructed by the acting Secretary of the Treasury, by circular of May 8th, 1848.

The plaintiffs, in their protest, contended, "that under existing laws, said goods are liable to a duty of twenty per cent. as a non-enumerated article," . . . . . . "under the 30th section of the tariff of 30th of July, 1846," dated 25th July, 1849, and 8th January, 1850.

The plaintiffs proved by witnesses, that the goods entered at the customs in schedule A, were reported by the appraisers as manufactures of cotton and flax; that he paid the duties thereon at the rate of twenty-five per cent. *ad valorem;* that they were manufactures composed of cotton and flax; "that the proportion of flax in the goods varies considerably, being in some about a half, in others about a third or a fourth; but that the flax is the material of chief value in the goods; that the appraisers' report of the goods as 'manufactures of flax and cotton,' means that the fabrics were composed of linen and cotton combined. None of them were manufactures of cotton or flax alone."

The plaintiffs' counsel prayed the court to instruct, "that if the jury shall find from the evidence that the goods in question were manufactures of 'linen and cotton combined,' and not 'manufactures composed wholly of cotton,' then that duty was exacted at the rate of twenty-five per cent. *ad valorem*, when the goods were subject only to twenty per cent. *ad valorem*, as a non-enumerated article, under the 3d section of the tariff of 1846." That instruction the court refused:

And charged the jury, that if they believe the goods in question are manufactures of flax and cotton combined, then, inasmuch as the 20th section of the tariff of 1842, directs that "on all articles from two or more materials the duty shall be assessed at the highest rate at which any of its component parts may be chargeable, the goods in question are subject to the same charge as articles enumerated under schedule D, as if manufactures composed wholly of cotton not otherwise provided for, and that they are therefore not articles subject to the duty of twenty per cent. only under 3d section of the tariff of 1846."

To the refusal to charge as moved by plaintiffs, and to the charge as given to the jury, the plaintiffs excepted.

Upon this exception the case came up to this court.

It was argued by *Mr. John S. McCullok*, for the plaintiffs in error, and by *Mr. Cushing*, (Attorney-General,) for the defendant.

*Mr. McCullok* filed a voluminous brief, from which the reporter can only make an extract, and selects that point upon which the decision of the court appeared chiefly to turn, namely the 4th point in the brief; and upon this point he is obliged

to omit the arguments and illustrations under the heads B and C.

The points made by Mr. McCullok, were the following:

The Court erred in refusing to rule, as prayed by the plaintiffs, that the goods being " manufactures of cotton and linen combined," and not " manufactures composed wholly of cotton," were subject to only twenty per cent. *ad valorem*, as " non-enumerated articles," under section 3d of the tariff of 1846; and also in charging the jury that " the goods were liable to twenty-five per cent. duty under schedule D, as if they were manufactures composed wholly of cotton, because the 20th section of the tariff of 1842 directed that in all articles manufactured from two or more materials, the duty shall be assessed at the highest rate at which any of the component parts may be chargeable," for the following reasons, to wit:

1st. The tariff of 1846, by its first section, substitutes the rates of duty thereby assessed upon the merchandise specifically enumerated in its schedules from A to H, in lieu of the duties theretofore imposed by all previous laws on the articles therein enumerated, and on such articles as were then exempt from duty.

2d. The tariff of 1846 specially enumerates, in its schedule I, all articles that should be exempt from duty.

3d. All articles not specially enumerated in the schedules from A to I of the Tariff of 1846, pay a duty of twenty per cent. only, and no more.

4th. The provisions of the 20th section, tariff of 1842, which require that " on all articles manufactured from two or more materials, the duty shall be assessed at the highest rates at which any of its component parts may be chargeable," are inconsistent with and repugnant to, — (a.) The object and policy of the tariff of 1846; (b.) The provisions of section 1 and schedules D and E of the tariff of 1846; (c.) The 3d section of the tariff of 1846.

5th. But the 20th section of the Tariff of 1842 is not merely a principle or rule of construction, and it cannot, when applied to the act of 1846, bring any article not specially named within any of the schedules from A to I, of 1846, nor take any article out of the provision of section 3, which imposes twenty per cent. on all articles not enumerated in said act of 1846.

(a.) The object and policy of the act of 1846 do not permit the 20th sect. of the tariff of 1842 to operate on the 3d sect. of 1846.

The act of 1841, c. 24, (5 L. U. S. 463, 464,) is the first act in which this clause occurs; and the act of 1841 had for its object the carrying out of the policy of the Compromise Act of 1833 c. 55, (4 L. U. S. 629,) and by its first section provides, that " on articles then (11th Sept. 1841) exempt from duty," or

"then paying less than twenty per cent. *ad valorem*," there should be levied and paid (after the 30th Sept. 1841) a duty of twenty per cent. *ad valorem*," except on the articles thereby exempted by name, &c. Then by its 2d section, 1841, c. 24, directs, "That on every enumerated article, similar in material, quality, texture, or use, to any enumerated article chargeable with duty, there shall be levied the same rate of duty which is levied on the enumerated article which it most resembles, &c.; and if it resembles equally two or more enumerated articles on which different rates of duty are now chargeable, there shall be levied the same rate of duty as is chargeable on the articles which it resembles, paying the highest duty; and on all articles manufactured from two or more materials, the duty shall be assessed at the highest rates at which any of its component parts may be chargeable;" this is followed by two provisos, namely: 1st. That if a duty higher than twenty per cent. shall be levied under the section, it shall not affect the disposition of the proceeds of the public lands. 2d. That no higher rate than twenty per cent. shall be charged on any unmanufactured article.

The act of 1841 does not profess to change the object of the Compromise Act, but aims at the levying of an uniform rate of twenty per cent. *ad valorem*, which was the uniform rate which the biennial reductions under the Compromise Act intended to effect. See 1833, c. 55, 4 L. U. S. 629.

The 20th section of tariff 1842, is identical in words with the act of 1841, § 2, except that the "now" and the two provisos are dropped.

The terms, "non-enumerated articles," used in the act of 1841, then mean "articles" not specially named in the tariffs of 1832, July 14th, and 1833, c. 55.

The same terms, "non-enumerated articles," used in § 20, tariff of 1842, have necessarily relation to § 10 of the act of 1842, which declares — "That on all articles not herein enumerated or provided for, there shall be levied, collected, and paid a duty of twenty per cent. *ad valorem*." The act of 1842, c. 270, by its sections from 1 to 9, inclusive, had substituted the duties therein specified on the articles thereby enumerated in lieu of the rates theretofore existing; and by its sections 10 and 20, prescribed twenty per cent. for articles not specially named or enumerated in said act, with the direction, that if higher duties could be exacted by reason of the material, texture, quality, use or fabric of articles not enumerated in said act, such higher rates of duty should be taken.

The words of the 20th section are in the present tense. They are "the same rate of duty which is levied and charged," and the

terms therein of "may be chargeable," can only relate to the charging by said act, because: 1st, it repealed all other rates theretofore laid, §§ 1 and 26; and 2d, all revenue acts in fixing rates of duty speak of the rates established in said acts, or in former acts; and 3d, to make provisions prospective rules for finding rates, express words of future efficacy must be employed. See Mills v. St. Clair Co. et al. 8 How. 569; Amer. Fur Co. v. U. S. 2 Peters, 358.

And in § 20 of tariff of 1842, no prospective words to control the rates that might thereafter be levied exist.

There never were any rules established by acts of Congress, nor by judicial decisions, by which it was laid down as a principle, " that if any article were composed of two or more materials it should, to favor commerce, be rated according to that component which was subject to the lowest rate of duty." The whole of the tariff acts of the United States proceed upon this plan — 1st, enumerating the articles subjected to given rates of duty; 2d, enumerating those exempted; and 3d, fixing an uniform rate or rates on articles not specially enumerated.

The courts have as uniformly held, that the only rules for finding the rates of duty were to look for the article : " 1st. Among those named by species or class. 2d. Among those exempted. And 3d. If not there found, it was non-enumerated." Such have been the decisions in Elliott v. Swartwout, 10 Pet. 137; Hardy v. Hoyt, 13 Pet. 292. The rules have been by the courts recognized to be these : 1st. The commercial name or class is to govern, and if the article belong equally well to two classes, the lowest tax shall be taken, (ex. flax-seed and linseed, schedules E and G, tariff, 1846.) 2d. That a slight difference in the make of the article shall not exclude it from its class. See Hall v. Hoyt, Ex. Doc. No. 49, 26th Cong. sect. 18, p. 33; Elliott v. Swartwout, 10 Pet. 137; 4 Cranch, 1; 5 Cranch, 284.

3d. That an article must have its entire fabric composed of hemp or flax to fall within the description of a manufacture of flax or hemp. See Hoyt v. Haight, Ex. Doc. No. 49, 26th Cong. sect. 1, p. 36.

4th. That an article composed of two materials, such as hemp and flax; if manufacturers of hemp or flax be not specially enumerated as a class, is a non-enumerated article. See Hoyt v. Haight, Ex. Doc. No. 49, 26th Cong. sect. 1, p. 36.

5th. That if an article is not, at the time of the passage of the Tariff Act, known by the name or class used in the tariff, then it is a non-enumerated article; and the use to which it may be put makes no difference. See Curtis v. Martin, 3 How. 106, — article, Cotton Bagging.

A comparison of the rates of duty assessed by the tariff of

1842, with those assessed by the tariff of 1846, has been authentically made, and is contained in Ex. Senate Doc. No. 227, 29 Cong. 1 S. pp. 78 to 100. And by an attentive examination of that document, it will be perceived that in the tariffs from 1789 to 1816 the rates were laid very uniformly; that from 1816 to 1833 they gradually increased; that the tariff of 1842 is the most discriminative in favor of American manufactures, and laid higher duties than any other tariff of the United States.

The act of 1846, then, from this comparison, merits the title which it bears, namely, "An act reducing the duty on imports and for other purposes." The object and design of the act of 1846 was, then,

1st. to reduce the duties on imports.

2d. Thereby to increase the revenue, in view of the Mexican war, &c.

3d. To specify all articles by name, and subject them to duty thereby; to exempt some few from duty, and to provide an uniform rate for all not enumerated.

The title of a revenue act guides in its interpretation. Stradling v. Morgan, Plow. 203; King v. Cartwright, 4 T. R. 490; The King v. G. Marks, et al. 3 East, 160; Rex v. Inhabitants of Gwenop, 3 T. R. 133.

So the preamble is also a guide to the interpretation of such an act. Salkeld v. Johnson, 1 Hare, 207; Emanuel v. Constable, 3 Russ. 436; Foster v. Banbury, 3 Sim. 40; U. S. v. Palmer, 3 Wheat. 610; State v. Stephenson, 2 Bail. 334; Burgett v. Burgett, 1 Ham. 469.

Looking back over the statute-book at the act of 1841, it was evidently framed upon the idea of the Compromise Act of 1833, and its second section enacts the rules of similitude and highest duty paying the component only with reference to articles which were then not enumerated by the then existing tariff acts.

And the act of 1842 was intended to levy the highest possible rates on all manufactures, with the view of protecting domestic manufactures, and hence it enacted by section 20 that similitude and highest duty paying component, as by that act assessed, should be grafted upon the 10th section, which assessed twenty per cent. *ad valorem* "on all articles not therein enumerated or provided for." This is conclusively shown when the 10th and 20th sections are read as one section, according to the rule that requires one clause to be read with other clauses, in order to determine the sense of the words used. Crespigny v. Wittenoom, 4 T. R. 791; 4 Bing. 196; The Emily and Caroline, 9 Wheat. 384; 1 Inst. 381; Stowell v. Zouch, Plow. 365; 1 Show. R. 108; Rex v. Burchett, Hard. 344.

. *Mr. Cushing*, (Attorney-General,) contended that there was no error in the instructions of the Circuit Court.

Linen is itself a manufacture, a thing made by art, a cloth made of flax or hemp, not a material for manufacture. The entry made by the plaintiffs at the custom-house of their goods, as "manufactures of linen and cotton," was an absurd description, a vulgarity which could not change the materials of which the goods were manufactured, a stratagem which could not elude the revenue laws, nor stop the official appraisers from reporting the truth, that the goods so entered, were manufactures of cotton and flax. So the appraisers reported, so the plaintiff's own witnesses proved.

The 20th section of the act of 30th August, 1842, is in force. It is not repealed by the act of 30th July, 1846.

The 11th section of the act of 30th July, 1846, enacts, " That all acts and parts of acts repugnant to the provisions of this act be, and the same are, hereby repealed." There is nothing in this act of 1846 repugnant to the provisions of the 20th section of the act of 30th August, 1842. They can stand together with consistency.

In Wood *v.* United States, 16 Peters, 362, 363, this court stated the rule, that, " It is not sufficient to establish that subsequent laws cover some, or even all of the cases provided for by it ; for they may be merely affirmative, or cumulative, or auxiliary. But there must be a positive repugnancy between the provisions of the new law and those of the old, and even then the old law is repealed by implication only, *pro tanto*, to the extent of the repugnancy. And it may be added, that in the interpretation of all laws for the collection of revenue, whose provisions are often very complicated and numerous, to guard against frauds by importers, it would be a strong ground to assert that the main provisions of any such laws sedulously introduced to meet the case of a palpable fraud, should be deemed repealed, merely because in subsequent laws, other powers and authorities are given to custom-house officers, and other modes of proceeding are allowed to be had by them, be-before the goods have passed from their custody, in order to ascertain whether there has been any fraud attempted upon the government. The more natural, if not the necessary inference in all such cases is, that the legislature intend the new laws to be auxiliary to and in aid of the purposes of the old law, even when some of the cases provided for may be equally within the reach of each. There certainly, under such circumstances, ought to be a manifest total repugnancy in the provisions to lead to the conclusion that the latter laws abrogated, and were designed to abrogate, the former."

The law does not favor repeals by implication; nor is it to be allowed, unless the repugnancy be quite plain; and although the acts be seemingly repugnant, yet they should, if possible, have such construction that the latter may not be a repeal of the former by implication. Bac. Abr. Stat. D; Foster's Case, 11 Coke, 63; Weston's Case, 1 Dyer, 347; Snell v. Bridgewater Cotton Gin Man. Co. 24 Pick. 296, 298; Dwarris on Statutes, ed. 1848, p. 531, 533; Smith's Commentaries, ch. 19.

"A later statute on a given subject, not repealing an earlier one in terms, is not to be taken as a repeal by implication, unless it is plainly repugnant to the former, or unless it fully embraces the whole subject-matter." Per Shaw, C. J., Goddard v. Barton, 20 Pick. 407, 410.

"Acts *in pari materia* are to be taken together as one law, and are to be so construed, that every provision in them may, if possible, stand. Courts, therefore, should be scrupulous how they give sanction to supposed repeals by implication." Per Wilde, J., Haynes v. Jenks, 2 Pick. 172, 176.

Therefore, it seems clear, that the 20th section of the act of 1842 is in force.

"The correct rule of interpretation is, that if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them, and it is an established rule of law, that all acts *in pari materia* are to be taken together, as if they were one law." United States v. Freeman, 3 Howard, 564; Ailesbury v. Pattison, 1 Doug. 30; Rex v. Loxdale and others, 1 Burr. 447; Bac. Abr. Statute I, pl. 21, 22, 23, 24.

From these authorities, the 20th section of the act of 1842, and the act of 1846, July 30th, relating to duties on imports, "are to be taken together, as if they were one law." By the law, a duty of twenty-five per cent. *ad valorem* is imposed on goods mentioned in schedule D, which comprises manufactures of cotton; and a duty of twenty per cent. *ad valorem* is imposed on goods mentioned in schedule E, which comprises manufactures of flax, and manufactures of hemp. But the goods entered by the plaintiff at the custom house, which are the subjects of this suit, were manufactures composed of cotton and flax, partly of the one material and partly of the other. None of them were composed wholly of flax, nor wholly of cotton, but compounded of both. Therefore, by the said 20th section, the duties upon such articles, manufactured from the two materials of cotton and flax were chargeable with the duty "assessed at the highest rates at which any of its component parts may be chargeable."

The 3d section of the act of 1846, (Vol. 9, p. 46, chap. 74,)

which imposes " On all goods, wares and merchandise, imported from foreign countries, and not specially provided for in this act, a duty of twenty per centum *ad valorem*," must be understood as comprehending only such articles, whether simple or compound, manufactured or not manufactured, as are not of any of the materials charged with duties by the act of 1846.

If that 3d section be not so limited, and the said 20th section of the act of 1842 be not applied to all articles, manufactured from two or more of the materials charged with duty in the several schedules of the act of 1846, then the rates of duty above twenty per cent. may, in a great variety of articles, be evaded and reduced to twenty per cent. by manufacturers, entered under new names, composed of two or more materials, one or more of them chargeable with a duty of one hundred, or of forty, or of thirty, or of twenty-five per cent. *ad valorem*, and mixed with a material or materials chargeable with the lower rates of duty.

It is the necessary and proper understanding of this 3d section, that it be confined and limited as above mentioned, and that the 20th section of the act of 1842 be applied to all articles manufactured from two or more articles chargeable with duty. If the decision of the Circuit Court in this case is not sustained, we may expect a swarm of entries to be made at the custom houses, of manufactures under new names, in evasion of the duties above the rate of twenty per cent. *ad valorem* intended by the act of 1846. This suit to recover back duties above twenty per cent. *ad valorem* upon goods manufactured of cotton and flax, entered at the custom house as "manufactures of linen and cotton," and subject only to a duty of twenty per cent., as nondescripts in the several schedules A, B, C, D, E, F, and G, is the beginning of a stratagem to elude the revenue laws, which, if successful, may be continued and accompanied by others of the kind.

Mr. Justice CURTIS delivered the opinion of the court.

The plaintiffs in error brought their action in the Circuit Court of the United States for the Southern District of New York, against the defendant, who was formerly collector of the customs for the port of New York, to recover moneys alleged to have been illegally exacted as duties. The plaintiffs entered at the custom house certain goods as "manufactures of linen and cotton," and claimed to have them admitted on payment of the duty of twenty per cent. levied on unenumerated articles under the 3d section of the Tariff Act of 1846. The defendant insisted that the 20th section of the Tariff Act of 1842 was in force, and that by force of it these goods, being manufactured

partly of cotton, must be assessed twenty-five per cent., that being the duty imposed by the act of 1846 upon manufactures of cotton not otherwise provided for. If these articles are, for the purpose of fixing the amount of duty, deemed by law to be manufactures of cotton, it is not denied that the duty was rightly assessed. And whether they are to be so reckoned and treated, depends upon the question whether the 20th section of the act of 1842 was repealed by the Tariff Act of 1846.

That 20th section is as follows: " That there shall be levied, collected and paid on each and every non-enumerated article which bears a similitude either in material, quality, texture, or the use to which it may be applied, to any enumerated article chargeable with duty, the same rate of duty which is levied and charged on the enumerated article which it most resembles in any of the particulars before mentioned; and if any non-enumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, there shall be levied, collected, and paid on such non-enumerated article the same rate of duty as is chargeable on the article it resembles paying the highest rate of duty; and on all articles manufactured from two or more materials, the duty shall be assessed at the highest rates at which any of its component parts may be chargeable."

This section is a reënactment of the 2d section of the Tariff Act of 1841. 5 Stat. at Large, 464.

The repealing clause in the act of 1846, is, " that all acts and parts of acts repugnant to the provisions of this act be, and the same are hereby, repealed." It is alleged by the plaintiffs that repugnance exists between the 20th section of the act of 1842 and the act of 1846. The argument is, that the act of 1846 divides all imports into three classes; first, those specified which are to be free of duty; second, those specified which are required to pay different but specific rates of duty; third, those not specially provided for in the act, which are required to pay a duty of twenty per cent. *ad valorem;* that a manufacture of cotton and flax not being included, *nominatim,* among the imports which are to be exempted from, or subject to, duty, is necessarily embraced within the class of non-enumerated articles, and so are liable to a duty of twenty per cent. only; and that this argument is strengthened by the fact that, in Schedule D, manufactures composed wholly of cotton are taxed twenty-five per cent.; and that if it had been intended to tax manufactures composed partly of cotton and partly of flax with a duty of twenty-five per cent., they would have been specifically mentioned in this schedule; and that it is not admissible, under an

act which, in terms, levies a tax of only twenty per cent. upon all imports not specially provided for, to levy a tax of twenty-five per cent. upon an import not named or described in the act as liable to that rate of duty.

The force of this argument is admitted. It is drawn from sound principles of interpretation. But on a careful consideration of this case, we are of opinion that it ought not to prevail in the construction of this law.

The act of 1846 is a revenue law of the United States, and must be construed with reference to acts in *pari materia,* of which it forms only one part. This observance of a settled principle for the construction of statutes is absolutely necessary in the present state of the legislation of Congress on the subject of revenue. Without it, the public revenue could not be collected, and inextricable embarrassments and difficulties must constantly occur. We are obliged to look at the whole existing system, and consider the nature of the subject-matter of the enactment under consideration, in its relations to that system, in order to pronounce with safety upon its repugnancy to, or consistency with, any particular act of Congress.

In the first place, then, it must be observed, that the 20th section of the act of 1842 does not impose any particular rate of duty upon imports. It was designed to afford rules to guide those employed in the collection of the revenue, in certain cases likely to occur, not within the letter, but within the real intent and meaning of the laws imposing duties, and thus to prevent evasions of those laws. Manufacturing ingenuity and skill have become very great; and diversities may be expected to be made in fabrics adapted to the same rules, and designed to take the same places as those specifically described by some distinctive marks, for the mere purpose of escaping from the duty imposed thereon. And it would probably be impossible for Congress by legislation to keep pace with the results of these efforts of interested ingenuity. To obviate, in part at least, the necessity of attempting to do so, this section was enacted.

It does not seem to be any more repugnant to the provisions of the act of 1846 than the great number and variety of provisions of the revenue laws, whose object was to cause the revenue to be regularly and uniformly collected without evasion or escape. If this act of 1846 had in terms enacted the 20th section of the act of 1842, its provisions would not thereby have been rendered repugnant or conflicting. This section would then only have afforded a rule by which it could be determined that certain articles did substantially belong to and were to be reckoned as coming under a particular schedule. This is apparent, not only from a consideration of the subject-matter of the

20th section, when compared with the act of 1846, but from the fact that this 20th section actually made part of an act whose subject-matter, and the outline of whose provisions, were the same as those of the act of 1846. The act of 1842 levied duties on certain imports specifically named. It declared certain other articles, also specifically named, to be exempt from duty, and it provided that a duty of twenty per cent. *ad valorem* should be levied on all articles not therein provided for. Yet this 20th section made a consistent part of that act. The 26th section of the act of 1842 provides, "that the laws existing on first day of June, 1842, shall extend to and be in force for the collection of the duties imposed by this act on goods, wares, and merchandise imported into the United States, and for the recovery, collection, distribution, and remission of all fines, penalties, and forfeitures, and for the allowance of the drawbacks by this act authorized, as fully and effectually as if every regulation, restriction, penalty, forfeiture, provision, clause, matter, and thing in the said laws contained had been inserted in and reënacted by this act."

The act of 1846 contains no corresponding provision. So that unless we construe the act of 1846 substantially as an amendment of the act of 1842, merely altering its provisions so far as the latter enactment is inconsistent with the former, the entire instrumentalities for the collection of the revenue under the act of 1846 would be wanting, and the duties which it requires to be paid could not be collected. It is quite apparent, therefore, that a great number and variety of provisions designed to protect the revenue against mistakes, evasions, and frauds, and to guard against doubts and questions, and to secure uniformity of rates in its collection, owe their present operation upon the duties levied by the law of 1846, to the vitality given to them by the law of 1842, and must be considered now to be the law because the act of 1842 made them, in effect, a part of its enactments, and because the act of 1846 does not interfere with that enactment by which they were made so. And it must be further observed, that these provisions of the 20th section of the act of 1842 are of the same nature as those thus left in force under the 26th section of the act of 1842, having been designed to remove doubts, to promote uniformity, and to check evasions and frauds.

There is nothing, therefore, in the general scope of the act of 1846 repugnant to the rules prescribed in this 20th section of the act of 1842. Is there in its particular phraseology?

It is strongly urged that there is; that the terms of the 3d section are wholly inconsistent with the attempt to bring any article under either of the schedules, by operation of any law

outside of the act of 1846. That this 3d section enacts, in clear terms, that a duty of twenty per cent. *ad valorem* shall be levied on all goods " not specially provided for in this act;" and that to levy a higher rate of duty, by force of a provision of some other act, is directly in conflict with the express words of the law. It must be admitted there is great force in this argument. It has received due consideration, and the result is, that in our opinion it is not decisive. In the first place it may be justly said, that if the act of 1846 has specially provided for manufactures of cotton, and has at the same time left in force a rule of law which enacts that all manufactures of which cotton is a component part shall be deemed to be manufactures of cotton, if not otherwise provided for, it has, in effect, provided for the latter. By providing for the principal thing, it has provided for all other things which the law declares to be the same. It is only upon this ground that sheer and manifest evasions can be reached. Suppose an article is designedly made to serve the uses and take the place of some article described, but some trifling and colorable change is made in the fabric or some of its incidents. It is new in the market. No man can say he has ever seen it before, or known it under any commercial name. But it is substantially like a known article which is provided for. The law of 1842 then declares that it is to be deemed the same, and to be charged accordingly; that the act of 1846 has provided for it under the name of what it resembles. Besides, if the words " provided for in this act " were to have the restricted interpretation contended for, a like interpretation must be given to the same words in other revenue laws, and the most prejudicial consequences would follow; such consequences as clearly show it was not the intention of Congress to have these words so interpreted.

Thus the 26th section of the act of 1842, already cited, adopts existing laws for the collection of duties " imposed by this act," for the collection of penalties and remission of forfeitures, and the allowance of drawbacks " by this act authorized." Yet, as has already been said, it is by force of this adoption that the duties and penalties under the act of 1846 are collected. It is manifest that the structure of the revenue system of the United States is not such as to admit of this exact and rigid interpretation; that the real intention of the legislature cannot thus be reached. The true interpretation we consider to be this: the 26th section of the act of 1842 having reënacted the then existing laws, and applied them to the collection of duties levied by that act, when Congress, by the act of 1846, merely changed the rates of duty, without legislating concerning their collection, the laws in force on that subject are to be applied;

Stuart et al. *v.* Maxwell.

and this application is not restrained by the fact, that, when reënacted by the act of 1842, they were declared to be so for the purpose of collecting the duties by that act imposed. The new duties merely take the place of the old, and are to be acted on by existing laws as the former duties were acted on; and among these existing laws is that which affords a rule of denomination, so to speak; which determines under what designation in certain cases a manufacture shall come, and how it shall be ranked; when this has been determined, the act of 1846 levies the duty.

It is urged, that in the act of 1846, special provision is made for certain manufactures composed partly of cotton, and that this shows no general rule was in operation imposing a particular rate of duty on articles made partly of cotton. But that this would not be a safe inference is evident from the fact that the act of 1842 imposes the same rate of duty on manufactures of wool and of manufactures of which wool is a component part, worsted, and worsted and silk, cotton, or of which cotton shall be a component part; yet this act of 1842 contained the section now under consideration. It may be observed, also, that schedule D, in the act of 1846, after manufactures composed wholly of cotton, goes on to specify cotton laces, cotton insertings, trimming laces, and braids, &c.

It would not be safe for the court to draw any inference from the apparent tautology of those parts of a revenue law describing the subjects of duty. In most cases, the terms used being addressed to merchants, are to be understood in their mercantile sense, the ascertainment of which is matter of fact, depending on evidence; and that which may seem merely tautologous might turn out to be truly descriptive of different subjects.

On the whole, our opinion is, that there is no necessary repugnance between the act of 1846 and the 20th section of the act of 1842, and consequently the former did not repeal the latter, and the duty in question was rightly assessed. The judgment of the Circuit Court is therefore affirmed.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of New York, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed, with costs.

Mr. Justice GRIER dissented.