# LIEBENROTH *v.* ROBERTSON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 147. Argued March 2, 1892. — Decided March 14, 1892.

Photographic albums, made of paper, leather, metal clasps and plated clasps, imported in April, May and June, 1885, the paper being worth more than all the rest of the materials put together, were not liable to a duty of 30 per cent *ad valorem,* as "manufactures and articles of leather," under Schedule N of the act of March 3, 1883, c. 121, (22 Stat. 513,) but were liable to a duty of only 15 per cent *ad valorem,* under Schedule M of that act, (22 Stat. 510,) as a manufacture of paper, or of which paper was "a component material, not specially enumerated or provided for" in that act.

Under § 6 of that act, (p. 491,) title 33 of the Revised Statutes was abrogated after July 1, 1883, and § 2499 in that title was made to read so that "on all articles manufactured from two or more materials the duty shall be assessed at the highest rates at which the component material of chief value may be chargeable," instead of reading that "on all articles manufactured from two or more materials the duty shall be assessed at the highest rates at which any of its component parts may be chargeable;" and that new provision was applicable to this case, although the new § 2499 also provided that "if two or more rates of duty should be applicable to any imported article it shall be classified for duty under the highest of such rates."

This last provision was not properly applicable, under § 2499, to an article "manufactured from two or more materials," and it had sufficient scope if applied to articles not manufactured from two or more materials, but still *prima facie* subject to "two or more rates of duty."

THE case is stated in the opinion.

*Mr. Stephen G. Clarke* for plaintiffs in error. *Mr. Edwin B. Smith* and *Mr. Charles Curie* were with him on the brief.

*Mr. Assistant Attorney General Maury* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought in the Superior Court of the city of New York, by Adolph Liebenroth, Iwan Von

Auw, William Graham and Herman Schliecher, composing the firm of Liebenroth, Von Auw & Co., against William H. Robertson, collector of the port of New York, to recover the sum of $552.55, as an alleged excess of duties exacted by the defendant on importations into the port of New York of photographic albums, in April, May and June, 1885, the duties assessed having been paid, protests duly filed and appeals taken to the Secretary of the Treasury. The suit was removed by the defendant, by certiorari, into the Circuit Court of the United States for the Southern District of New York. The case was tried before the court and a jury, in January, 1888, and a verdict found for the defendant by the direction of the court, followed by a judgment for him for costs. The plaintiffs have brought a writ of error.

There is a bill of exceptions, which shows that the substantive part of the protest was as follows: "We hereby protest against your decision and assessment of duties, as made by you, and the payment of more than as below claimed, on our importations below mentioned, consisting of certain bound albums or album books, claiming that, under existing laws, and section 2499 and Schedule M, act of March 3, 1883, said goods are liable to only 15% *ad val.* as a manufacture of which paper is the component material of chief value, not otherwise specially enumerated or provided for, or claiming that, under existing laws, and particularly by said section and said schedule, they are liable at only 20% *ad val.* as 'blank books,' or said goods are liable at no more than 25% *ad val.* as 'books,' under same section and schedule."

The duty was exacted and paid at the rate of 30 per cent *ad valorem* on the goods, as manufactures of articles of leather, or of which leather was a component part, they being composed of paper, leather, metal clasps and plated clasps, and of their various component materials, the paper being, in ninety-nine cases out of a hundred, worth more than all the rest of the materials put together. The examiner in the appraiser's department testified, on the trial, that he classified the goods as "manufactures of leather and paper, leather chief value," but that his classification was erroneous, because the paper

was the material of chief value.   They were dutiable under the act of March 3, 1883, c. 121, (22 Stat. 488).

Neither photographic albums nor albums of any kind were specified by those names as dutiable.   Schedule N of that act (p. 513) imposes a duty of 30 per cent *ad valorem* on "all manufactures and articles of leather, or of which leather shall be a component part, not specially enumerated or provided for in this act."   By Schedule M of the act (p. 510) a duty of 15 per cent *ad valorem* is imposed on "paper, manufactures of, or of which paper is a component material, not specially enumerated or provided for in this act;" and a duty of 20 per cent *ad valorem* on "blank books, bound or unbound, and blank books for press copying," and also a duty of 25 per cent *ad valorem* on "books, pamphlets, bound or unbound,   .   .   . not specially enumerated or provided for in this act."

By title 33 of the Revised Statutes, § 2499, it was provided as follows: "There shall be levied, collected and paid on each and every non-enumerated article which bears a similitude, either in material, quality, texture or the use to which it may be applied, to any article enumerated in this title, as chargeable with duty, the same rate of duty which is levied and charged on the enumerated article which it most resembles in any of the particulars before mentioned; and if any non-enumerated article equally resembles two or more enumerated articles, on which different rates *of duty* are chargeable, there shall be levied, collected and paid, on such non-enumerated article, the same rate of duty as is chargeable on the article which it resembles paying the highest duty; and on all articles manufactured from two or more materials the duty shall be assessed at the highest rates *at which any of its component parts may be chargeable."*

By § 6 of the act of March 3, 1883, c. 121, (22 Stat. 489, 491,) title 33 of the Revised Statutes was abrogated after July 1, 1883, and the following section was substituted as § 2499: "There shall be levied, collected, and paid on each and every non-enumerated article which bears a similitude, either in material, quality, texture or the use to which it may be applied, to any article enumerated in this title as chargeable with duty,

the same rate of duty which is levied and charged on the enumerated article which it most resembles in any of the particulars before mentioned; and if any non-enumerated article equally resembles two or more enumerated articles on which different rates are chargeable, there shall be levied, collected and paid on such non-enumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest duty; and on all articles manufactured from two or more materials the duty shall be assessed at the highest rates *at which the component material of chief value may be charge-able.* If two or more rates of duty should be applicable to any imported article it shall be classified for duty under the highest of such rates: *Provided,* That non-enumerated articles similar in material and quality and texture, and the use to which they may be applied, to articles on the free list, and in the manufacture of which no dutiable materials are used, shall be free."

In comparing the former and later enactments of § 2499, it is to be noted that in the later one the words "of duty," in italics, are omitted; that the words in the earlier one, "at which any of its component parts may be chargeable," in italics, are omitted, and the words in the later one, "at which the component material of chief value may be chargeable," in italics, are substituted therefor; and that the following language is added in the later enactment, which does not appear in the earlier one: "If two or more rates of duty should be applicable to any imported article, it shall be classified for duty under the highest of such rates: *Provided,* That non-enumerated articles similar in material and quality and texture, and the use to which they may be applied, to articles on the free list, and in the manufacture of which no dutiable materials are used, shall be free."

At the close of the plaintiffs' testimony, the defendant, without putting in any evidence, moved the court to direct a verdict in his favor. The court did so, the plaintiffs excepted, and a verdict was rendered for the defendant.

The question is as to whether the proper rate of duty on the goods was 30 per cent *ad valorem* or only 15 per cent *ad*

*valorem.* Leather was a component part or material of the article, and was dutiable at 30 per cent. Paper was a component part or material of the article, and was dutiable at 15 per cent. On the view that both of those two rates of duty were applicable to the article, and that there was a provision in § 2499, as enacted by the act of March 3, 1883, that in such case the article should be classified for duty under the highest of the two rates, that is, in this case, 30 per cent, that rate of duty was assessed.

The reasons assigned by the Circuit Court for directing a verdict for the defendant are reported in 33 Fed. Rep. 457; and it would appear from them that the court gave no effect to the later provision in § 2499, as enacted by the act of March 3, 1883, that "on all articles manufactured from two or more materials the duty shall be assessed at the highest rates at which the component material of chief value may be chargeable."

These albums were articles manufactured from materials two of which were paper and leather; and, as the evidence distinctly showed that the paper was the component material of chief value, the duty was assessable under Schedule M of the act of 1883, at 15 per cent, under the clause imposing that duty on "paper, manufactures of, or of which paper is a component material, not specially enumerated or provided for in this act."

The change, in the later enactment of § 2499, of the duty on "all articles manufactured from two or more materials," from a duty, "at the highest rates at which any of its component parts may be chargeable," to a duty, "at the highest rates at which the component material of chief value may be chargeable," is very significant, especially considered in connection with the new provision in the later § 2499, that, "if two or more rates of duty should be applicable to any imported article, it shall be classified for duty under the highest of such rates." There was clearly a new classification provided for as to "all articles manufactured from two or more materials," based upon the highest rate chargeable on "the component material of chief value;" and the further new provision was

added, imposing the highest rate of duty where two or more rates of duty were applicable to an article. This last provision was not properly applicable, under § 2499, to an article "manufactured from two or more materials," and it had sufficient scope if applied to articles not manufactured from two or more materials, but still *prima facie* subject to "two or more rates of duty."

The decision by the Circuit Court in the present case was made in January, 1888. Since that date there have been three decisions by this court bearing on the question involved.

In *Arthur* v. *Butterfield*, 125 U. S. 70, 76, decided in March, 1888, it was held, under the later § 2499, that "to place articles among those designated as enumerated, it is not necessary that they should be specifically mentioned. It is sufficient that they are designated in any way to distinguish them from other articles;" and that the words "manufactures of hair" were a sufficient designation to place such manufactures among the enumerated articles.

In *Hartranft* v. *Meyer*, 135 U. S. 237, 239, decided in April, 1890, attention was called to the change made by the act of 1883 in § 2499, in regard to "articles manufactured from two or more materials," assessing the duty on them "at the highest rates at which the component material of chief value may be chargeable," instead of "at the highest rates at which any of its component parts may be chargeable," as a change by which, "instead of making the duty depend on the highest rate at which any component part is chargeable, it is made to depend on the highest rate at which the component material of chief value is chargeable;" and in that case, the article being composed of silk, cotton, and wool, the silk being the component material of chief value, this court held that the duty was chargeable at the silk rate, which was higher than the rate chargeable on the other component materials of the goods.

So, too, in *Mason* v. *Robertson*, 139 U. S. 624, decided in April, 1891, § 2499, as enacted by the act of March 3, 1883, was under consideration, and *Arthur* v. *Butterfield* and *Hartranft* v. *Meyer* were cited. The question was whether bichro-

mate of soda was a non-enumerated article, within the "similitude clause" of § 2499, and thus subject to the same duty as bichromate of potash, which was specifically enumerated, or was subject to duty as a chemical compound and salt, not specially enumerated or provided for in that act. The Circuit Court had ruled that the article was a non-enumerated one, bearing a similitude in use to bichromate of potash, had declined to submit to the jury the question of similitude, and had directed a verdict for the defendant. The importer claimed that the article was liable to a duty of only 25 per cent *ad valorem*, as a chemical compound and salt not specially enumerated or provided for in the act. This court reversed the judgment of the Circuit Court, and alluded to the fact that the description "manufactures composed wholly of cotton," or even "manufactures of cotton," had been held to be a sufficient enumeration, citing *Stuart* v. *Maxwell*, 16 How. 150, and *Fisk* v. *Arthur*, 103 U. S. 431, and holding that there was nothing in its decision inconsistent with the decisions in *Stuart* v. *Maxwell*, 16 How. 150, and in *Arthur* v. *Fox*, 108 U. S. 125.

*The judgment of the Circuit Court is reversed, and the case is remanded to that court with an instruction to grant a new trial.*