In re PUGET SOUND REDUCTION CO.

(Circuit Court, D. Washington, N. D.   August 16, 1899.)

1. CUSTOMS DUTIES—ASSESSMENT—METHOD OF ASSAYING LEAD ORES.
    Paragraph 6 of the sundry civil appropriation act of March 2, 1895 (2
    Supp. Rev. St. p. 430), which requires the secretary of the treasury to pre-
    scribe regulations for the sampling and assaying of imported lead ores for
    the purpose of the assessment of the duty thereon, which "shall provide
    that the method of sampling and assaying such ores shall be the same as
    that usually adopted for commercial purposes by public sampling works in
    the United States," was not repealed by implication by paragraph 181 of
    the tariff act of 1897 (Act July 24, 1897), which provides that ores con-
    taining lead on their arrival "shall be sampled according to commercial

methods," that the government assayer shall make a "proper assay" of the sample on which the duties shall be liquidated, and authorizes the secretary to make necessary regulations for enforcing such provisions.

**2. SAME—COMMERCIAL METHOD—QUESTION OF FACT.**
Said paragraph 181 is entirely consistent with the act of 1895, and under the latter the secretary has no power to adopt any other than the commercial method either of sampling or assaying, and what constitutes such method is a question of fact to be determined upon evidence.

**3. SAME—"FIRE PROCESS"—"WET PROCESS."**
It being shown by uncontradicted testimony that what is known as the "fire process," which gives the quantity of lead in an ore that can be saved by smelting, is exclusively used in making assays for commercial purposes, and is known as the "commercial method," instructions issued by the treasury department adopting for customs purposes what is known as the "wet process" of assaying, which shows the actual quantity of lead in an ore, making no allowance for loss in smelting, require the payment of a higher duty than is contemplated by the tariff act, and are in contravention of the positive requirement of the act of 1895.

This is an appeal by the Puget Sound Reduction Company from a decision of the board of general appraisers affirming the action of the collector in the assessment of duty on certain imported ores containing lead.

F. H. Brownell, for appellant.

Wilson R. Gay, U. S. Atty., and Charles E. Claypool, Asst. U. S. Atty.

HANFORD, District Judge. This is an appeal taken pursuant to section 15 of the act of congress approved June 10, 1890 (1 Supp. Rev. St. U. S. [2d. Ed.] p. 751), under which section the appellant is entitled to have a review of the questions of law and fact involved in the decision of the board of general appraisers with respect to certain duties upon imported ores containing lead, which were paid by the appellant under protest. The appellant alleges that by reason of the improper method of assay for ascertaining the weight of lead contained in the ores the collector of customs for the Puget Sound district required payment of excess duties on the lead contained in said ores, amounting to $1,074.15. The board of general appraisers has made a return to this court, showing that several protests respecting the alleged excess of duties were duly transmitted to the board; that through a clerical error the notice of the date of hearing was misdirected, and presumably was not received by the appellant, and it failed to appear at the time appointed for consideration by the board of said protests; that no evidence was introduced, and for lack of "evidence to controvert the correctness of the official assays" the board determined that such assays were correctly made, and affirmed the decision of the collector of customs in accordance therewith. It is an admitted fact in the case that the assays upon which the duties were based were made according to a chemical process known as the "wet process," and the appellant contends that the 181st paragraph of Schedule C of the tariff law known as the "Dingley Law" (Act July 24, 1897), under which the duties were collected, requires the government officers to determine the quantity of lead contained in imported ores by a "proper assay" of samples taken according to commercial

methods of sampling mineral ores, and that a proper assay under the laws of the United States must be by the process known as the "fire method," which is the usual and customary way in trade for ascertaining the quantity of lead contained in mineral ores. The evidence introduced by the appellant in this court shows that in the business of buying and selling mineral ores containing lead the fire method of assay is exclusively used for ascertaining the quantity of lead, and is known as the commercial method; and that, while the wet process is the best for estimating accurately the actual quantity of lead contained in ore, the fire method is the fairest in a business sense, for by that method the amount of lead which can be saved by the process of smelting can be more accurately ascertained; the difference between the two methods is approximately the amount of lead which is necessarily lost in the process of smelting. The government, instead of offering rebutting evidence, relies upon the last clause of the 181st paragraph of Schedule C, which is as follows: "And the secretary of the treasury is authorized to make all necessary regulations to enforce the provisions of this paragraph." And it is contended that certain rulings and decisions heretofore made by the board of general appraisers and by the treasury department have the force of regulations promulgated by the secretary of the treasury under the authority of this statute, and that the practice, pursuant to said rulings and decisions, of making assays according to the wet process, being sanctioned by a regulation prescribed by the secretary of the treasury, must be conclusively presumed to be the true method for making a proper assay within the meaning of the phrase "proper assay" as it is used in the statute. It is shown that on September 10, 1894, upon a protest of one F. A. Hartman against the decision of the collector of customs at San Francisco as to the rate and amount of duties chargeable upon certain silver ore containing lead, which was imported December 20, 1893, the board of general appraisers made a decision to the effect that "the common commercial and correct test for lead is by the wet process." In a letter to the treasury department, dated October 7, 1898, the Chicago & Aurora Smelting & Refining Company of Aurora, Ill., challenged the correctness of said decision by the board of general appraisers, and in a letter under date of October 12, 1898, the assistant secretary of the treasury said:

"In reply, you are informed that, whatever may be the method of assay actually used for 'commercial purposes,' the 'wet assay' alone is adopted for purposes of assessment of duties on the lead contained in imported ores, inasmuch as such assay insures the maximum of accuracy."

And he refers to a letter written by himself under date of May 21, 1898, to the collector of customs at El Paso, Tex., in which he said:

"The director of the mint, to whom the matter has been referred, reports that the method proposed by Mr. Johnson is unsatisfactory, as the results obtained are, in the case of refractory ores, uniformly too low, and that the wet assay adopted by the department insures the maximum of accuracy attainable in a limited time with uniformity of practice."

In a letter to the director of the mint, dated October 9, 1897, the acting secretary of the treasury set forth certain letters showing the method of appraisement in practice at the port of New York, from

which it appears that the lead contents of imported ores were ascertained by the wet method. These several matters have been printed and issued by the treasury department as circulars of instruction, but it is not shown that the secretary of the treasury has in any other manner promulgated any regulations affecting the question under consideration. In the argument it is said that the decision of the board of general appraisers made October 10, 1894, having been acquiesced in by the treasury department, established the wet assay as the method in use by the department at the time of the passage of the Dingley law, and therefore it should be presumed that the wet method was regarded by congress as the true method for a proper assay. But this argument leaves out of view the express declarations in the laws enacted by congress indicating a different intent. Paragraph 165 of Schedule C of the tariff act known as the "Wilson Law," approved August 27, 1894. (2 Supp. Rev. St. U. S. p. 278), contains the following provisions:

"Provided, that silver ore and all other ores containing lead shall pay a duty of three-fourths of one cent per pound on the lead contained therein, according to sample of assay at the port of entry. The method of sampling and assaying to be that usually adopted for commercial purposes by public sampling works in the United States."

Paragraph 6 of the sundry civil appropriation act, approved March 2, 1895, provides as follows:

"The secretary of the treasury shall prescribe regulations for the sampling and assaying of lead ores imported into the United States, and such regulations shall provide that the method of sampling and assaying such ores shall be the same as that usually adopted for commercial purposes by public sampling works in the United States. * * *" 2 Supp. Rev. St. U. S. p. 430.

That portion of the Wilson law above quoted was repealed by the Dingley law, but the act of March 2, 1895, has not been repealed, unless by necessary implication, because repugnant to the provisions of the Dingley law. I am unable to find that it is inconsistent with the Dingley law in any particular; on the contrary, paragraph 181, above referred to, indicates quite plainly that congress intended to adhere to the policy of resorting to the commercial method for ascertaining the quantity of lead in imported ores. That law provides that:

"On the arrival of the ores * * * they shall be sampled according to commercial methods under the supervision of government officers, * * * who shall submit the samples thus obtained to a government assayer, * * * who shall make a proper assay of the sample and report the result to the proper government officers, and the import entries shall be liquidated thereon. * * *"

It would require a very strained construction of the law to find that congress, after having, in 1894, and again in 1895, enacted statutes requiring the sampling and assaying of ores for the purpose of collecting duties thereon to be according to commercial methods, and without having expressly repealed the law of 1895, could have intended in this law of 1897 to continue the same policy as regards the methods of sampling, and yet depart from that method for the purpose of assaying. Such a construction for the purpose of making the burden upon commerce heavier would be contrary to the rule sanctioned by the supreme court of the United States in the case of

Hartranft v. Wiegmann, 121 U. S. 609, 7 Sup. Ct. 1240, in the following words: "Duties are never imposed on the citizen upon vague or doubtful interpretations." In other decisions of the supreme court it has been held that in construing tariff laws "the terms used, being addressed to merchants, are to be understood in their mercantile sense, the ascertainment of which is matter of fact, depending upon evidence." Stuart v. Maxwell, 16 How. 150–163; Two Hundred Chests of Tea, 9 Wheat. 430–438; U. S. v. One Hundred and Twelve Casks of Sugar, 8 Pet. 277; Elliott v. Swartwout, 10 Pet. 151; Arthur v. Morrison, 96 U. S. 108. It is my opinion that the secretary of the treasury is required, by the positive provisions of the acts of congress above referred to, to prescribe regulations for the assaying of lead ores by the commercial method, and that what is the commercial method is a question of fact, for the decision of which resort must be had to evidence. In this case the evidence is all one way, and it is in all respects satisfactory and convincing. From it I find that the commercial method for ascertaining the quantity of lead contained in imported ores is the fire process, and any other method of assaying does not meet the requirements of the law. I direct that findings and a judgment in favor of the appellant be entered herein for the amount of excess of duties which it has paid, as shown by the statement by which this appeal was initiated.