FLORES ALVAREZ & Co., Plaintiffs and Appellants, *v.* JUAN G. GALLARDO, TREASURER OF PORTO RICO, Defendant and Appellee.

No. 3925.   Argued November 24, 1926.—Decided December 23, 1926.

J. J. *Ortiz Alibrán* for the appellants.   *Hon. George C. Butte, Attorney General, C. Llauger Díaz* and *José A. López Acosta* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

In a suit to recover taxes paid under protest the complainant showed that its business was the wholesale and retail selling of shoes and other merchandise for gentlemen and that for the sale of such merchandise it realized during September and October, 1925, the sum of $40,009.68; that by reason of section 62 of the Act of August 20, 1925, the complainant had under protest paid into the treasury two per cent of that amount, namely, the sum of $800.19.

The District Court of San Juan rendered judgment against the complainant. The opinion of the court considered and overruled the various contentions of the complainant, seeking to establish the unconstitutionality of the act of the legislature. It held that there was no property tax involved, but an excise. Our attention has also been drawn to the opinion of Mr. Justice Wells of the United States District Court for

Porto Rico in the case of *Valdés et al.* v. *Gallardo,* Equity No. 1313, covering in part the same field and sustaining the tax. We shall make full use of either opinion in disposing of the present case.

The first assignment was that the court committed error considering that the tax was not one directly imposed upon property. The appellant says that without doubt section 62 of the Act of August 20, 1925, imposes a tax upon all sales, except the ones excepted in section 83 of the same act. In point of fact section 62 refers to section 16 and this and other sections have application. Section 62 is as follows:

"There shall be levied and collected on the sale of any articles the object of commerce, not specified in section 16 of this Act or exempted from taxation as provided in said section, a tax of two (2) per cent on the price or value of the daily sales of such articles, whether such sales are for cash or on credit, which tax shall be paid at the end of each month by the person making such sales."

Assuming for the moment that it was the purpose of the legislature to cover all sales made, we shall consider whether we are dealing with a property tax.

The appellant, to show that we are dealing with a property or direct tax, cites *Nicoll* v. *Ames,* 173 U. S. 509, 521. The court there said:

"A tax upon the privilege of selling property at the exchange and of thus using the facilities there offered in accomplishing the sale differs radically from a tax upon every sale made in any place. The latter tax is really and practically upon property. It takes no notice of any kind of privilege or facility, and the fact of a sale is alone regarded. Although not created by Government, this privilege of facility in effecting a sale at an exchange is so distinct and definite in its character, and constitutes so clear and plain a difference from a sale elsewhere, as to create a reasonable and substantial ground for classification and for taxation when similar sales at other places are untaxed. A sale at an exchange differs from a sale made at a man's private office, or on his farm or by a partnership, because, although the subject-matter of the sale may be

the same in each case there are at an exchange certain advantages in the way of finding a market, obtaining a price, the saving of time, and in the security of payment, and other matters, which are more easily obtained there than at an office or upon a farm. To accomplish a sale at one's farm or house or office might and probably would occupy a great deal of time in finding a customer, bringing him to the spot and agreeing on a price. All this can be done at an exchange in the very shortest time and at the least inconvenience. The market is there, and all that is necessary is to send the commodity. Although a sale is the result in each case and the thing sold may be of the same kind, the difference exists in the means and facilities for accomplishing such sale, and those means and facilities there is no reason for saying may not be taxed, unless all sales are taxed, whether the facilities be used or not.''

We are assuming with appellant that the tax is on all sales. In the same case of *Nicol* v. *Ames,* p. 520, the court had held that the want of uniformity had not been shown. We quote: ''Whether the word 'uniform' is to be understood in what has been termed its 'geographical' sense, or as meaning uniformity as to all the taxpayers similarly situated with regard to the subject-matter of the tax, we think this tax is valid within either meaning of the term.'' So that if this is a tax on all sales there is no lack of uniformity. We think this would be true even if certain persons selling less than $100 are excluded, provided they are uniformly excluded.

However, we have no doubt that the tax does not apply to all sales. Section 62 says: ''On the sale of any articles, the object of commerce.'' It is unnecessary to attempt to sustain the tax as an additional occupation tax, although an argument might be built up on this line. ''The object of commerce'' makes a sufficient segregation of sales. In Porto Rico, for example, we have a Code of Commerce and we have been frequently called upon to say whether a particular act or instrument falls without or within the said code. Innumerable sales of personal property may be made in Porto Rico and not be acts of commerce. Practically every act done by a merchant, however, in his business is

the object of commerce. A sale by a merchant is an object of commerce and is sufficiently cut off from other civil sales. Such a cutting off makes the sale an excise. Commerce has its special privileges and burdens and is specially regarded by the law. A sale the object of commerce is an excise within the original definition of the word or as defined by the courts. *Nicol* v. *Ames, supra; West India Oil Co.* v. *Gallardo,* 6 Fed. Rep. 2nd 523; *Flint* v. *Stone Tracy Co.,* 220 U. S. 108; *Billings* v. *U. S.,* 232 U. S. 261; *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506.

Being an excise, it may be subjected to the test of uniformity, as in the Organic Act, section 2, unnumbered paragraph 22, where it says, "That the rule of taxation in Porto Rico shall be uniform." This test is a geographical one. *Knowlton* v. *Moore,* 178 U. S. 41; *Billings* v. *U. S.* 232 U. S. 282, and cases cited; *Successors of C. & J. Fantauzzi,* 30 P.R.R. 410, and citations. As the tax applies equally all over the Island, there is no objection to it on this ground.

The second assignment of error is as follows:

"The court erred in considering the tax valid notwithstanding the fact that the defendant applied it to certain particular sales."

The defendant treasurer in applying section 62 has limited it to a first sale, whether the goods are manufactured in Porto Rico or brought here from the United States or foreign ports. The appellant maintains that this action of the treasurer is tantamount to legislation and such a power can not be delegated to this officer. We are quite agreed that legislative powers can not be delegated to the treasurer, but we do not find that there has been any delegation.

Again, in discussing the second assignment the appellant says that section 62, *supra,* imposes a tax on all sales. We have already pointed out that no such construction can be put upon said section. The appellant draws attention to the fact that section 69 of the Act says:

"Every manufacturer, wholesale dealer, retail dealer, representative, commission merchant or any other person making sales, when so required by the duly authorized officers of the Department of Finance shall produce his account books and any other evidence relative to purchases or sales made by him and shall permit said officers to examine such books and documents and to take note of any entry made therein."

"Making sales," "*operaciones de venta*" in Spanish, can only mean, in connection with section 62, sales the object of commerce. Section 69 when it uses the words "or any other person making sales," presents a clear case of *noscitur a sociis*. And the same reasoning applies to sections 81 and 82 fixing penalties.

Coming then to the fact that the treasurer has collected taxes on first sales, we agree with the court below that a failure on the part of the treasurer to enforce the act on all sales would not affect the validity of the statute itself.

And we also agree with the court that if appellant is bound under the act, a failure to collect from others would not affect this suit.

We agree that given the words of section 62, taken by themselves, the tax is not specifically limited therein to first sales. Section 62, however, is supposed to cover cases of sales not theretofore covered by section 16, and section 16 is limited to first productions or sales. We think this reference back alone shows, by a species of *noscitur a sociis*, that the legislature did not intend to cover anything but the first introduction and sale in Porto Rico. Sections 37, 38 and 39 of the Act are as follows:

"Sec. 37. Dealers shall be liable for the payment of the tax upon selling or transferring the taxable article to another dealer or to a consumer.

"Sec. 38. The consumer shall be liable for the payment of the tax upon coming into possession of the taxable article for use or consumption in Porto Rico.

"Sec. 39. Taxes prescribed by this act on the sale, transfer, use or consumption in Porto Rico of articles comprised in section

16 shall be paid by the dealer upon selling or transferring the taxable article to another dealer or to a consumer."

These sections make it clear that the legislature had in mind first productions or sales, the generation or introduction of articles in Porto Rico. The history of the legislation supports this view. Originally the legislature attempted to tax importations, but found numerous objections. So that the ultimate law is an evolution and to some extent a limitation on what might be taxed. As pointed out by Mr. Justice Wells, speaking of adequacy of the remedy, the legislature has, in our opinion, found the way. However, it has always been the intention of the legislature to tax only the first introduction or first generation in Porto Rico. Acts *in pari materia* are to be considered. *Stuart* v. *Maxwell,* 16 How. 150, 25 R. C. L. 1067, 1068, 36 Cyc. 1147. Section 16 is *in pari materia* and so is the previous legislation attempting to tax.

We can not agree with the appellant that such a construction is to leave persons exempt from taxation. The idea of the new tax law is to bring in persons who were not taxed before and an exemption is something different.

Section 83 of the Act leaves certain persons exempt whose monthly sales are less than $100, and the appellant in his third assignment of error maintains that this exemption makes the law unconstitutional. Exemptions of this kind are freely made. *Bells Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232; *Brushaber* v. *Union Pacific R. R. Co.,* 240 U. S. 1; *Maxwell* v. *Bugbee,* 250 U. S. 525; *Beers* v. *Glynn,* 211 U. S. 477, and cases. It is a case practically of *de minimis.* The Constitution of the United States, for example, provides that in suits at law involving more than $50 the right of trial by jury shall be preserved. Various laws in the United States, including our Code of Commerce, exempt from the necessity of a writing to evidence them contracts below a certain amount. As shown by the court below, the physical

difficulties in the attempt to collect for small sales is a sufficient justification.

The rate cases do not help appellant. The analogies from such a field are illusory. Taxation is a pragmatic matter and its constitutionality is generally to be measured by its ultimate effect on persons taxed, confiscation, serious inequality and the like. *Bells Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, *supra.* Moreover, the appellant does not show us on what basis the existence of exemptions or inequalities is to make an act invalid in Porto Rico. There is no lack of uniformity shown.

In its fourth assignment of error the appellant says the court did not consider the evidence of the complainant. The discussion of this assignment of error was really merged in the other three assignments of error and needs no further discussion.

We find no error and the judgment should be affirmed.

Mr. Justice Hutchison took no part in the decision of this case.