## Case No. 17,671.

### WILKINSON et al. v. GREELY.

[1 Curt. 63.] [1]

Circuit Court, D. Massachusetts. Oct. Term. 1857.

NEW TRIAL—SUFFICIENCY OF EVIDENCE—REVENUE CASES.

1. A new trial will not be granted because the verdict is against the evidence, unless the court can clearly see that the jury must have unconsciously fallen into some mistake, or been actuated by some improper motive.

[Cited in Hunt v. Pooke, Case No. 6,895; Cady v. Phœnix Fire Ins. Co., Id. 2,284; Shaw v. Scottish Commercial Ins. Co., Id. 12,723; Fuller v. Fletcher, 6 Fed. 130.]

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

2. In revenue causes, it is particularly important that the verdict should be the result of a full and careful investigation of the questions of fact.

[Cited in Johnson v. Root, Case No. 7,409.]

This was an action of assumpsit, brought by the plaintiffs [Arthur Wilkinson and others]. who are merchants in the city of Boston, against the defendant [Philip Greely, Jr.]. the collector of that port, to recover back a sum of money paid to him, under protest, for duties on certain merchandise imported by the plaintiffs. It appeared, at the trial, that in August, 1849, there arrived in Boston, by two ships, two parcels of merchandise, consigned to the plaintiffs, and invoiced as being blankets; that the defendant refused to allow them to be entered and passed as blankets, paying a duty of 20 per cent., but exacted a duty of 30 per cent. ad valorem, as being, not blankets, but articles not enumerated, of which wool was the component material of chief value. The trial was before Mr. Justice Woodbury, at the last May term of the court, who instructed the jury that the burden of proof was on the collector, to show that the article was not truly described in the invoice, and that the question was, whether these articles were such as, at the time of the passage of the act of 1846 [9 Stat. 42] were known in commerce as blankets. The jury found a verdict for the defendant. The plaintiff moved for a new trial, because the verdict was against the evidence, and also for newly discovered evidence.

The questions were argued before Mr. Justice WOODBURY, at the last term, but had not been decided by him at the time of his decease, and at the present term were again argued, before Mr Justice CURTIS.

The District Attorney and Mr. Sanger, for the United States.

Mr. Woodbury and A. W. Griswold, for plaintiffs.

CURTIS, Circuit Justice. I hold it to be my duty not to interfere with the verdict of a jury, as being against the evidence, unless I can clearly see that the jury must have unconsciously fallen into some mistake, or been actuated by some improper motive in rendering the verdict. Alsop v. Commercial Ins. Co. [Case No. 262]; Fearing v. De Wolf [Id. 4,711]; Hepburn v. Dubois, 12 Pet. [37 U. S.] 376. On examining the evidence introduced by the defendant, on whom was the burden of proof, to show that these articles were not known in commerce as blankets, at the time of the passage of the tariff act of 1846, I find he called seven witnesses. The first was C. J. F. Allen, an appraiser in the custom-house, who testified that he, and Mr. Bradley, another appraiser, examined these articles, and concluded they were not blankets in the meaning and intent of the law; that he has always considered the stripe essential to a blanket, but he should call the plaintiffs'

green sample a horse-blanket, though it has no stripe. It must be noted that this is rather evidence of the witness's own views of nomenclature, and of the interpretation of the law, than direct testimony that the articles were not generally known in commerce as blankets. The testimony of Charles Bradley, the other appraiser, is, that they were not known, prior to 1846, as blankets. Lincoln, another appraiser, testifies in the same way, but he admits that, as an appraiser, he had passed as blankets an invoice of these articles, of somewhat higher cost, and same general style and fabric, and which were imported by the plaintiffs under the same order, arriving a little earlier, by another vessel. Chase, another witness; who had been, until the last three years, an importer, and since a manufacturer, testified they were not known as blankets, but admitted that he had had difficulty with the plaintiffs. and two bills were produced, made out by one of his clerks, who, he said, was a competent man of business, showing sales of similar articles by his firm, under the name of blankets. Simpson, a manufacturer, testified they were known as coatings, and not as blankets, though if they had a stripe they might be called blankets. Thomas Tarbell, who was forty-five years an importer in Boston, but had retired from business, testified that these articles were generally known as blankets, in commerce, in and long before 1846, and that the stripe was not material. Lewis Mills, who had been a merchant, and was connected indirectly with manufacturing business, testified he should not have supposed the plaintiffs' samples were blankets; he would call them blanket coating, but that the absence of the stripe made no difference.

Bearing in mind the nature of the fact to be proved, namely, that these articles were not generally known in commerce as blankets, and consequently the number of witnesses who must have knowledge of this fact. if it be true, this strikes me as a very weak case. Out of these seven witnesses, one, Mr. Tarbell, is directly and pointedly against the defendant; two, Lincoln and Chase, have practically treated such articles, or had them treated, by an agent, as blankets, and two, Allen and Simpson. rest their evidence on the absence of the stripe, which Tarbell, and Mills, and eleven witnesses for the plaintiffs. swear is immaterial. On the other side, the plaintiffs produce six witnesses, resident here, and five, by depositions, from New York, importers, and dealers in, and manufacturers of clothing, who swear that prior to 1846, and ever since, articles, in all respects like these, have been generally known in commerce as blankets, and they state the reasons why the stripe, which was formerly borne on blankets, has been generally left off; and one of them testifies that in 1846 he paid about $1,000, under protest, for duties on articles like the plaintiffs', and in 1848 it was returned to him by the government.

Now, although it is true that the defendant introduced some evidence fit to be weighed by the jury, it is to my mind clear that the whole evidence, viewed together, not only preponderated in favor of the plaintiffs, but so decidedly and strongly preponderated that it seems to me scarcely possible that men of average intelligence, who understood what the question was, could have hesitated to come to the conclusion that the defendant had not sustained the burden of proof which rested on him.

Whether there is not another question in the case, not submitted to the jury specifically, namely, whether the absence of the stripe is not sufficient to render these goods coatings, if by leaving off the stripe they are made such in substance, cannot now be determined. I am sensible of the difficulty under which I labor in this case, from not having been present at the trial, for I know very well that evidence which is heard from a witness who is seen, may properly produce an effect on the mind quite different from a report of the same evidence. But the law has made it my duty to decide this motion upon such a report, and one party to this case is as likely to gain or lose by it as the other. It was fairly suggested, at the bar, that the witnesses are to be weighed, and not numbered, and that several of the plaintiffs' witnesses are importers, and one of them a foreigner; but it is a fair answer, that though importers have one interest, manufacturers have another, and that every witness called by the defendant, who did not testify against him, was either a custom-house officer, or connected with manufactures in the United States. It was also argued that great weight should be allowed to the fact that the jury had the samples of the plaintiffs' merchandise, and also of other cloths and blankets, before them, and so had means of forming an opinion not known to the court. But the question, as submitted to them, was of such a character that the exhibition of these samples could conduct the jury but a short distance towards the result. It was not for the jury to find what they would deem a fit name for these articles, but what name they generally bore in commerce; and whatever may have been the appearance of the samples, this could be known to the jury only by the testimony of commercial men. Indeed, I am inclined to think that this exhibition of samples was one cause why the jury was misled: for, unless they were carefully cautioned, they would be very likely to compare the samples with their own ideas of what a blanket should be, and thus go aside from the true question.

My judgment has also been somewhat affected by the conviction, that newly-discovered evidence, of considerable importance. may be laid before the jury on another trial. I do not think this alone would be sufficient cause to set aside the verdict, because the evidence is cumulative, and because I

am not satisfied that due diligence was used to discover and produce this evidence at the trial; but when the court sees reason to believe that the jury have fallen into a mistake, it may well affect the exercise of its discretion, and cause it to act with less hesitation, if it also sees that, on another trial, the subject will be investigated under fuller and better light, and so justice will be more certainly done. Norris v. Freeman, 3 Wils. 38; Jackson v. Sternbergh, 1 Caines, 163.

I consider that the nature of this case is justly entitled to some consideration, on this motion for a new trial. Judicial decisions of such questions, under the revenue laws, afford guides both to the government and the importer in very numerous cases; and it is of great public importance that they should rest on secure foundations, which are felt to be such as ought to be generally satisfactory; otherwise they will not be acquiesced in, and litigation will be multiplied, with the chance, at least, that different results may be arrived at in different parts of the country, and thus a system of duties on imports, designed to be uniform throughout the United States, will be in danger of becoming unequal, and consequently unjust.

In trials of this kind, the jury really do what is ordinarily done by the court; for they put an interpretation on the language of a statute. This is inevitably necessary; but it makes the meaning of the law dependent on the verdicts of juries, which can have no legal operation, except in the cases in which they are rendered, instead of being settled by the judicial decision of the highest court, which would be binding in other future cases. This is an evil, and it is highly important that it should not be magnified by suffering verdicts in such cases to stand, when the court sees sufficient reason to believe that the investigation was incomplete, and that the jury must have been under some mistake respecting the true question on which they were required to pass.

The result is that the verdict is to be set aside, and a new trial granted.

[For instructions to the jury on a subsequent trial, see Case No. 17,672.]