ARTHUR v. UNKART.

1. In 1873, certain gloves, commercially known as " silk plaited gloves," or "patent gloves," made on frames and manufactured in part of silk and in part of cotton, cotton being the component part of chief value, were imported at New York, upon which the collector imposed a duty of sixty per cent *ad valorem,* under the eighth section of the act of June 30, 1864 (13 Stat. 210). *Held,* that the articles did not come within the general terms of that section, because, 1st, they were not, by reason of their component materials, silk gloves ; 2d, they were commercially known only as "plaited gloves," or "patent gloves;" and, 3d, they did not fall within the concluding clause, silk not being the component part of chief value.

2. Not being included in the act of 1864, the articles were dutiable under the twenty-second section of the act of March 2, 1861 (12 Stat. 191), and the thirteenth section of the act of July 14, 1862 (id. 556), where they are enumerated as gloves made on frames.

3. In an action against a collector of customs to recover the amount of duties on imports alleged to have been exacted in violation of law, the burden of proof is upon the plaintiff.

ERROR· to the Circuit Court· of the United States for the Southern District of New York.

·In May, 1873, Unkart & Co. imported into New York certain merchandise, upon which the plaintiff in error, the collector of the port, assessed and collected· a duty of sixty per cent, under the eighth section of the act of June 30, 1864 (13 Stat. 210), which imposed a duty of sixty per cent on various articles of clothing made of silk; naming hats, gloves, &c. The concluding clause of the section is as follows: "On all manufactures of silk, or of which silk is the component of chief value, not otherwise provided for, fifty per cent *ad valorem.*"

Against the imposition of that rate of duty the importers protested in due form, upon the ground that such merchandise, being gloves and similar articles made on frames, not otherwise provided for, is only liable to duty under the twenty-second section of the act of March 2, 1861, and the thirteenth section of the act of July 14, 1862, at the rate of thirty-five per cent *ad valorem*, less ten per cent; under the second section of the act of June 6, 1872, as a manufacture of cotton, or of which cotton is the component part of chief value.

Upon the trial of this action, which was to recover the excess so paid, it was conceded that the articles in question were gloves; that they were commercially known as "silk-plaited gloves," or "patent gloves;" that they were manufactured in part of silk and in part of cotton, and were made on frames.

The court charged the jury, that, while the burden of proof was upon the plaintiffs to show that they had fulfilled all the formal, ordinary prerequisites to bringing their action, it was upon the defendant to justify his exaction of the duty imposed, so that it was for them to be satisfied that the evidence fairly preponderated in favor of the defendant, that the materials which were the component of chief value in the gloves in question were silk; otherwise, the plaintiffs were entitled to a verdict, there being no question on the evidence but that the prerequisites in regard to which the burden rested upon the plaintiffs had been complied with. The jury found that cotton was the chief component of value in the gloves, and that the value of the silk therein was less than that of the cotton, and gave their verdict for the plaintiffs.

*Mr. Assistant-Attorney-General Smith* for the plaintiff in error.
*Mr. Stephen G. Clarke, contra.*

MR. JUSTICE HUNT delivered the opinion, of the court.

The twenty-second section of the act of March 2, 1861 (12 Stat. 191), provided a duty of thirty per cent on many articles, and, among them, " caps, gloves, leggins, mits, socks, stockings, wove shirts and drawers, and all similar articles made on frames, of whatever material composed, worn by men, women, or children, and not otherwise provided for."

The thirteenth section of the act of July 14, 1862 (id. 556), increases this duty by the same descriptive terms, five per cent *ad valorem*.

By the act of June 6, 1872 (17 id. 230), the duties upon manufactures of cotton, having cotton as the component of chief value, were reduced ten per cent.

The articles in question did not come within the general terms of the eighth section of the act of 1864, for these reasons: 1st, They were not silk gloves; by reason of their component materials being composed of silk and cotton, the latter material preponderating ; 2d, they were commercially known as " plaited gloves," or " patent gloves," and not as silk gloves.

They did not fall within the concluding clause, because silk was not the component of chief value. The facts here stated are founded upon the concessions of the parties at the trial and upon the verdict of the jury.

Not being included in the act of 1864, the articles are dutiable under the acts of 1861 and 1862, where they are enumerated as gloves made on frames, and by the act of 1862, which adds five per cent to the duty of 1861.

The suggestion is made that the articles may be taxed under the similitude clause of the act of Aug. 30, 1842. 5 Stat. 565 ; Rev. Stat., sect. 2499. This provision, by its terms, applies to non-enumerated articles only (*Stuart* v. *Maxwell*, 16 How. 150) ; and no such claim was made on the trial that it applied to this case. Among the ten carefully prepared points presenting the views of the government, there is no reference made to the similitude act of 1842. Neither the collector in imposing the tax, nor the counsel at the trial, professed to act under or

to demand any advantage from the act of 1842.   The right of the government was placed exclusively upon the act of 1864. Upon the point of the rate  of duties to which the goods were liable, we are of the opinion that the importers were right, and were entitled to a return of the excess paid by them.

There is, however, a further question in the case.   The counsel for the defendant requested the court to charge, that, in this action to recover for an alleged illegal exaction of duties, it devolved upon the plaintiff to make out his case, by showing the illegality complained of; that the burden of proof was on the plaintiff to satisfy the jury, by a fair preponderance of evidence, as to the character of the materials of the gloves. The court refused this request, but charged the jury " that the burden of proof is upon the defendant to justify his exaction of the duty imposed, so that it is for you to be satisfied that the evidence fairly preponderates in favor of the defendant, that the materials which are the component of chief value are silk, otherwise the plaintiffs are entitled to a verdict."

It is not doubted that it was the duty of the collector, in the first instance, to decide whether the articles imported were dutiable, and at what rate.   The statute makes it his duty. Neither can it be doubted that unless protest is made within ten days, and unless an appeal is taken to the Secretary of the Treasury within thirty days after such decision, the decision of the collector on these points is final and conclusive.   The statute expressly declares that it shall be so.   The decision of the Secretary upon such appeal is also declared by the statute to be final and conclusive, unless a suit be brought to recover any alleged excess of duties within ninety days after such decision, or within ninety days after the payment of duties, if payment be made after such decision.   No suit can be maintained until the decision of the Secretary has been had as to any transaction at a point east of the Rocky Mountains, unless his decision has been delayed for more than ninety days. 13 Stat. 214, sect. 14 ; Rev. Stat., sect. 2931.   Express authority to maintain the action is given by the statute of 1845 and the Revised Statutes.   5 Stat. 727 ; Rev. Stat., sect. 3011.

When an appeal is taken from his decision, the decision of the collector ceases to be conclusive ; and the same is true of the

decision of the Secretary of the Treasury. These officers are, however, selected by law for the express purpose of deciding these questions: they are appointed and required to pronounce a judgment in each case; and the conduct, management, and operation of the revenue system seem to require that their decisions should carry with them the presumption of correctness. This rule is not only wise and prudent, but is in accordance with the general principle of law, that an officer acting in the discharge of his duty, upon the subject over which jurisdiction is given to him, is presumed to have acted rightly.

The case may be likened to that of a sheriff who levies upon the property of a debtor, who claims that a portion of it is exempt from seizure upon execution. It is not sufficient that the debtor shall claim the exemption, but he must, by proof of registry when necessary, or that the articles seized are those named in the statute, or are required to make up the amount of the exemption, or in some other mode, prove that articles were exempt, and that thus the seizure was illegal. Both the sheriff and collector have power to act in the first instance upon the question in dispute, and he who insists that such action is in violation of law must make the proof to show it. *Griffin* v. *Lathulu,* 14 Barb. (N. Y.) 456; *Tuttle* v. *Buch,* 41 id. 417; *Van Sickler* v. *Jacobs,* 14 Johns. (N. Y.) 434.

The importers here bring their suit, alleging in their complaint not merely that there was an exaction of duties, but that such exaction was excessive and illegal. The burden of proof is upon the party holding the affirmative of the issue. *Johns* v. *Plowman,* 49 Barb. 472. Mr. Roscoe says: "When the issue involves the charge of culpable omission, it is incumbent on the party making the charge to prove it, although he must prove a negative, for the other party shall be presumed to be innocent until proved to be guilty." Roscoe, Evid. 52, cited 15 Pick. 317, where the issue was upon the materiality of a fact not communicated to the underwriter.

In *Bank of the United States* v. *Davis* (2 Hill (N. Y.), 451), where the question was whether a discount had been made in bills procured from the old Bank of the United States, the court say, that the party alleging the illegality of a contract has the burden of proof, there being nothing illegal upon its face.

To the same purport see *Cuyler* v. *Sanford,* 8 Barb. (N. Y.) 225.

So, on an application to vacate an assessment for a local improvement on the ground of fraud, the burden of proof is on the applicant. *Matter of Petition of Sarah Bassford et al.,* 50 N. Y. 509.

In an action against public officers for a non-feasance, the burden of proof is on the plaintiff. *Mintlan* v. *Rochfeller,* 6 Conn. 276.

Mr. Greenleaf (Greenl. Evid., sect. 80) thus lays down the rule: "So where the negative allegation involves a criminal neglect of duty, official or otherwise, or fraud, or the wrongful violation of actual lawful possession of property, the party making the allegation must prove it; for in these cases the presumption of law, which is always in favor of innocence and quiet possession, is in favor of the party charged;" and many instances are cited.

Again, it is to be observed that in the case of the articles in question, as with most other importations, they were admitted to be liable to some duty. Simply holding the goods for duty was not, therefore, of itself an illegality. It was only when they were held for more duty than the law justified that it became duress and illegal; and, to entitle himself to recover for the illegality, the plaintiff must show such excessive charge. If the collector had no authority in the premises, and could hold the goods for no amount whatever, a different question would arise. But here the very issue was as to amount, and the proof, therefore, of illegal amount rested upon the plaintiff.

The case of *Wilkinson* v. *Greeley* (1 Curt. 63) is cited to sustain the ruling we are considering. It is true that the circuit judge, on the trial of that case, charged that the burden of proof was on the collector to show that the articles were not truly described in the invoice, and were, therefore, subject to the higher duty, and that, on the motion for a rehearing before Mr. Justice Curtis, he assumed that to be the law. It does not, however, appear that the point was made and argued by counsel, or that it received from the learned judge that consideration which would entitle it to be held as an authority. The ruling has never been followed in the circuit where made, so far as

we can· learn, and during the last fifteen years we have the authority of Mr. Justice Clifford for saying that the law has · always been held in that circuit to be otherwise.

For this error the judgment must be reversed and *a venire de novo* awarded; and it is

*So ordered.*