## HORSFIELD v. UNITED STATES (No. 248).[1]

FROZEN HEN'S EGGS IN TIN CANS.

Hen's eggs, having their whites and yolks mixed in exact proportion, the white and the yolk of each egg being thrown into a common receptacle and the total contents being placed in hermetically sealed tin cans and frozen for shipment, are dutiable under paragraph 256, tariff act of 1909, as eggs not specially provided for.—Sun Kwong On v. United States (143 Fed Rep., 115) approved.

United States Court of Customs Appeals, January 5, 1911.

APPEAL from a decision of the Board of United States General Appraisers, Abstract 23479 (T. D. 30691).
[Affirmed.]

*Joseph G. Kammerlohr* for appellant.
*D. Frank Lloyd*, Assistant Attorney General (*Thomas M. Lane* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

BARBER, Judge, delivered the opinion of the court:

In March, 1910, the appellant imported ·from China and entered at the port of New York the merchandise which is the subject of this

---

appeal. It was assessed by the collector for duty under paragraph 256 of the tariff act of August 5, 1909, which reads—

Eggs not specially provided for in this section, five cents per dozen.

The importation consists of the whites and yolks of hen's eggs frozen in tin cans, hermetically sealed, each can containing a little more than 40 pounds.

The evidence shows this substance as to weight is composed of the whites and yolks of eggs in about the proportion of 60 to 40, which is the ratio as to weight that ordinarily exists between the whites and the yolks of hen's eggs.

After importation it comes into competition with hen's eggs in our markets.

The importer makes the following contentions:

1. That the merchandise is not dutiable under paragraph 256, as it is not the article therein provided for.

2. That the merchandise is free of duty under paragraph 560 of the act of 1909, which provides for free entry of "Eggs of birds * * *."

3. That the merchandise is a manufactured article composed of two or more materials, the one of chief value being egg albumen and dutiable under paragraphs 481 and 257 of the same act, the material parts of which are as follows:

481. * * * and on arti-les not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value. * * *

257. Eggs, dried, fifteen cents per pound; eggs, yolk of, twenty-five per centum ad valorem; albumen, egg or blood, three cents per pound. * * *

4. That the merchandise is properly dutiable under said paragraph 257 as egg albumen chief value.

With reference to his first contention, the appellant says, in substance, that paragraph 256 relates to eggs that are contained in the shell, and so susceptible of being counted; that this mixture of whites and yolks in a frozen condition is not susceptible of being counted as eggs by the dozen and therefore not included within the fair meaning of paragraph 256.

The record presents this question in manner following: In assessing the duty by the dozen, the collector estimated that 11 eggs would make a pound of the mixture. No evidence was taken by either party tending to show whether or not this estimate was correct.

The appellee contends that under such a state of facts the burden is upon the importer to establish by evidence the incorrectness of the action of the collector, and, having failed in that regard, that this court will presume the same to be correct.

We have already considered a similar question in the case of the Pantasote Company *v.* United States, decided October 18, 1910, and

adopted the principle for which the appellee contends, *supra*, p. 47. (T. D. 31008.)

It seems to be settled law, both upon reason and authority, that the judgment of the collector in classifying dutiable merchandise will be presumed to be correct until it is shown by proof to be erroneous. He is an officer selected by law to decide the questions of classification and empowered and required to pronounce judgment thereon. The proper conduct, management, and operation of the revenue system require that his decisions upon questions within his jurisdiction should carry with them the presumption of correctness.

The person who contends it to be erroneous is likened to a debtor claiming property seized by a sheriff upon execution to be exempt therefrom. Upon such person the burden is cast of making good his claim by proof. Argument, however logical, is not proof. Arthur *v.* Unkart (96 U. S., 118); United States *v.* Schering (123 Fed. Rep., 65).

It follows that this contention of the importer is not sustained.

In the same connection the importer contends that the collector at the port of New York differently classified similar merchandise so as to establish an official practice of assessment which should be of weight and control. Upon this question it appears from the evidence that during the years 1903 and 1904 infrequent shipments of whites and yolks of eggs not frozen but usually containing some preservative were assessed at the rate of 25 per cent ad valorem as similar to egg yolk; that during the year preceding the importation in question this practice had been followed and that the change in the assessment was made at the time of this importation by special instructions of the Treasury Department.

We do not think these facts change the situation.

The appellant's second contention that the eggs are free of duty under paragraph 560, as we view it, lacks merit.

The words "eggs of birds" as used in this paragraph manifestly do not relate to eggs of poultry which are brought here in direct competition with our own producers.

Schedule G of the tariff act of August 5, 1909, in which paragraph 256 is found, relates to agricultural products and provisions, and it is clear to us that this paragraph includes hen's eggs. To hold otherwise would practically nullify paragraph 256 as, if it be held that hen's eggs are embraced in paragraph 560, it is difficult to see why the eggs of all poultry would not be entitled to free entry. Under such a construction there would be few, if any, eggs of commercial importance coming within the meaning of the paragraph.

This question has already been passed upon by the courts in the case of Sun Kwong On *v.* United States (143 Fed. Rep., 115). There it was claimed that domesticated duck's eggs in the shell, packed in salt and mud, were entitled to free entry under paragraph 549 of the

tariff act of 1897. They were held to be dutiable under paragraph 244 of the same act. It will be observed that so far as applicable to the case now before us paragraphs 244 and 549 of the act of 1897 are reenacted in paragraphs 256 and 560 of the law of 1909. We have no question that the last-cited case correctly construes the paragraphs.

Relating to the appellant's third contention, that the merchandise is dutiable as an article manufactured of two or more materials, it seems to us that he misapprehends the force of the evidence. In effect, he claims that the eggs are by one operation broken and the whites and the yolks separated and placed in different containers, that afterwards they are reunited in such proportions as the trade requires, stirred, canned, and frozen solid, which manipulations produce, he says, a manufactured article consisting of two materials, viz, egg whites or egg albumen and egg yolks, and therefore dutiable as above suggested.

Passing the question of whether or not such operations would be a manufacture, we think the evidence fails to disclose that this importation was so produced.

The record discloses that the only witness who testified upon this subject was offered on behalf of the appellant. He testified, in substance, that merchandise similar to that in question was prepared as follows: The eggs are brought in from the country in bulk; girls are employed to break them, and at the time of breaking the whites and the yolks are either cast into one receptacle or are separated as may be desired. If the whites and the yolks are not separated at the time of breaking it is not afterwards attempted. For the process of breaking without separation these girls receive 5 cents per 1,000 eggs, which is increased 1 cent per 1,000 if the whites and yolks are separated. That the separation is made when the orders for the merchandise require.

The evidence does not disclose that this importation was produced by the mixing of whites and yolks that had already been separated. The fact that the proportion of whites and yolks it contains is the same as exists in the ordinary hen's eggs leads rather to the contrary conclusion. It would seem to be a useless operation to first separate and then reunite the whites and yolks of the same eggs, or of others in the same proportion that they are naturally found, and we can not find any evidence that it was so done in this case. On the contrary, we conclude that this importation consists of eggs which have been removed from the shell, canned, and frozen before importation, and it is not claimed such a substance is a manufactured article within the meaning of paragraph 481.

The foregoing conclusions render unnecessary any discussion of the appellant's fourth claim.

The judgment of the Board of General Appraisers is *affirmed.*