(C. D. 1602)

SPATOLA WINES, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 25, 1954)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *Warren E. Burger*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: This case relates to the assessment of internal revenue tax of $2 per wine gallon under section 3030 (a) (2) of title 26 of the Internal Revenue Code, as amended by section 1650, upon 9 pipes of sherry wine, imported at the port of Philadelphia. Said assessment, made upon withdrawal from warehouse, was based upon a finding that the wine contained more than 21 per centum and not more than 24 per centum absolute alcohol. It is claimed on behalf of the plaintiff that the wine contained more than 14 per centum but not more than 21 per centum of absolute alcohol, and should, therefore, be subject to a tax of only 60 cents per wine gallon. Plaintiff's pleadings were amended to include a claim under paragraph 813 of the Tariff Act of 1930, as amended by Public Law 612, but this claim was not pressed. The protest is limited to pipes numbered 5, 9, 11, 26, 28, 63, 82, 96, and 98. No claim is made as to the regular customs duty.

The original shipment, of which these 9 pipes constituted a part, was made up of 100 pipes. All of the wine was placed in bonded warehouse upon arrival, under warehouse entry, dated July 13, 1944. Test samples were taken from 3 pipes of wine, which, upon analysis showed 21 per centum absolute alcohol by volume. During the period from August 1 to November 7, 1944, 40 pipes of the wine were

withdrawn and assessed with internal revenue tax at the rate of 60 cents per wine gallon. Thereafter, and on January 23, 1945, a regauge was requested by the importer under the provisions of section 16.5 (d), Customs Regulations of 1943, as to the 60 pipes remaining in warehouse. This regauge showed that the 60 pipes contained 9,628 wine gallons. At that time, and on the Government's own initiative, a test was made of 6 pipes at the customs laboratory and all were found to contain more than 21 per centum absolute alcohol. The liquidating division received the report of this test on March 6, 1945. Four of the 9 pipes here involved, Nos. 28, 63, 82, and 98, were withdrawn from warehouse for consumption on February 2, 1945, and the remaining five, Nos. 5, 9, 11, 26, and 96, were withdrawn on March 6, 1945.

On May 1, 1945, the importer requested and obtained permission to dilute the wine in the 51 pipes of wine still remaining in bonded warehouse in order to bring the alcoholic content below 21 per centum. Upon the withdrawal of those 51 pipes (not here involved), the collector assessed a tax at the rate of 60 cents per wine gallon. The above facts are shown by the testimony of the deputy collector of customs, in charge of liquidation and drawback at the port of entry.

It is claimed on behalf of the plaintiff that the collector should have used the result of the original test, viz, a 21 per centum alcoholic content, in liquidation of the entry as to the 9 pipes here involved, for the reason that, where an official test has been made and where no manipulation has taken place in a bonded warehouse prior to the retest, neither the law nor the regulations authorize the Government to base taxes upon unsolicited retests.

Said section 16.5 (d), *supra*, in effect at the time this merchandise was entered and withdrawn, is in the following language:

Internal-revenue taxes on alcoholic beverages imported in barrels, casks, or similar containers shall be collected only on the number of proof gallons (or wine gallons if below proof) and fractional parts thereof actually entered or withdrawn for consumption. The quantity determined on the basis of the original customs gauge shall be considered the quantity actually entered or withdrawn and no regauge shall be made for the purpose of assessing internal-revenue taxes unless the lapse of time or the condition of the containers prior to entry or withdrawal indicates that the quantity shown by such original gauge has been substantially reduced by evaporation or leakage, or unless prior to entry or withdrawal the person making the entry or withdrawal makes a written request for a reguage. If fewer than 90 days have elapsed since the date of the original gauge, the request shall include a statement of the reasons for believing that such original gauge does not correctly indicate the quantity to be withdrawn. When request for regauge of imported wine of not over 24 per centum of alcohol by volume is made in accordance with this paragraph, an affidavit from the person making the entry or withdrawal as to the actual number of wine gallons and fractional parts thereof entered or withdrawn for consumption may be accepted in lieu of actual reguage, provided the affidavit is filed within 5 days after the date of entry or withdrawal and an abnormal outage is not disclosed. Customs duties

shall be collected on the gallonage determined on the basis of the original customs gauge.

In the alternative, plaintiff contends that the result of the retest cannot be applied to the 9 pipes here involved for the reason that none of that merchandise had been retested.

The Government contends that it is the duty of the collector to determine the per centum of absolute alcohol in all wines about to enter the commerce of the nation in order that he may properly assess the internal revenue tax thereon. Further, it is contended that, in the absence of any statute or regulation expressly forbidding said testing or retesting, it must be presumed that such action was legal. This is in line with the well-known rule that the law presumes, in the absence of clear evidence to the contrary, that public officials properly discharge their official duties. *Arthur* v. *Unkart*, 96 U. S. 118; *Coe* v. *Errol*, 116 U. S. 517; *Muser* v. *Magone*, 155 U. S. 240.

Upon the record, it is apparent that plaintiff's case rests entirely upon the claim of illegality of the collector's action. Even were we to agree with plaintiff's claim, the record is devoid of proof that the wine contained in the 9 pipes here involved did not, at the time of withdrawal, contain over 21 per centum absolute alcohol, as assessed. Such proof was necessary in order that plaintiff should prevail. It is axiomatic that plaintiff must not only prove that the collector was wrong but that his contention is correct. Nowhere do we find evidence that at the time of withdrawal of the 9 pipes here involved the absolute alcohol content was within the range of more than 14 per centum and not in excess of 21 per centum.

We find no merit in plaintiff's claim, as set forth in the brief, that because pipes numbered 28, 63, 82, and 98 were withdrawn on February 2, 1945, which was 19 days prior to the time the customs laboratory tested samples from the importation, the actions of the customs officials were untimely and ineffective, insofar as they relate to the wine in those 4 pipes. Certainly, a retest made within less than 3 weeks of the time these 4 pipes were withdrawn would present a more accurate finding of the absolute alcohol content than the original test, which was made on July 28, 1944, more than 7 months prior to such withdrawal.

There remains only the consideration of the issue that the result of the retest cannot be applied to the 9 pipes here involved for the reason that none of that merchandise has been retested. Plaintiff cites no authority, and we know of none, under which the Government is required to test or retest all of the wine, that is, make an official test or retest of each of the specific 9 pipes of wine involved. Originally, 3 per centum of the importation was tested. Upon the retest, 10 per centum of the remaining 60 pipes was tested. It, therefore, appears that a higher percentage of the merchandise which included the 9

pipes in suit was retested than the percentage of the test originally made. As above stated, proof of the inaccuracy of the retest is lacking. We, therefore, find this claim untenable.

Judgment will be rendered for the defendant overruling plaintiff's claims.