(C.D. 2449)

## J. J. DUNBAR & Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 27, 1964)

*Glad & Tuttle (Edward N. Glad* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Morris Braverman,* trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

RICHARDSON, Judge: The merchandise at bar is covered by two protests, which were consolidated for purposes of trial, and consists of whisky imported in barrels from Canada and entered for consumption at Seattle, Wash. Duty was assessed under 19 U.S.C.A., section 1001, paragraph 802, as modified by T.D. 52739 (paragraph 802, Tariff Act of 1930, as modified by T.D. 52739), at the rate of $1.25 per proof. gallon, and internal revenue tax under 26 U.S.C.A., section 5001(a)(1)

(section 5001 (a) (1), Internal Revenue Code of 1954), at the rate of $10.50 per proof gallon.

The question raised by the protests concerns the proper determination of the proof of the whisky. At the trial of the issue, the original gauging reports, laboratory reports, and commercial invoices were received in evidence. With regard to the proof, these documents disclose the following information:

| Entry number | No. of barrels | Invoice proof | Hydrometer proof | Distillation proof |
|---|---|---|---|---|
| 1313 | 38 | 129 | 129 | 130.3 |
| 9286 | 28 | 131 | 131 | 134.1 |

Walter W. Potts, chief chemist at the customs laboratory in San Francisco, testified as a witness on behalf of the plaintiff. He testified, in substance, that he is familiar with the distillation and hydrometer methods of ascertaining the proof of alcoholic beverages, that the gauger sends the samples which the laboratory uses to make the distillation tests, that the distillation method is used when the alcoholic beverage contains an appreciable amount of solids, which he described as being in excess of two-tenths of a gram per 100 milliliters, that it is not possible to determine the solids content of overproof whisky by the use of the hydrometer method, and that the distillation method involved the separation of the solid material from the liquid in a certain weight or volume of a given sample, and the liquid, consisting of water and alcohol, is the true proof. The witness identified the laboratory reports in evidence as being the official reports filed with the entries. He stated that the tests reported were made in accordance with the customs regulations, and that, in both instances, the reports indicate the presence of solids in excess of 0.2 gram per 100 milliliters, one showing 0.38 gram per 100 milliliters (entry #1313), and the other showing 0.35 gram per 100 milliliters (entry #9286).

In liquidation, the collector adopted the distillation proofs as shown by the laboratory reports as the basis for assessment of duties and taxes on the merchandise at bar. On the evidence presented, the plaintiff contends that the hydrometer proofs of all the barrels in the importation constitute the proper gauge for assessment of duties and taxes against the involved merchandise, relying upon the provisions of 26 CFR, 1961 edition, section 186.31 (section 186.31, Internal Revenue Regulations [revised as of January 1, 1961]). The defendant contends that the distillation proofs, as returned by the customs laboratory from analyses of composite samples of the merchandise at bar, evidence the true proofs and that the collector's reliance thereupon should be sustained upon the authority of *Cummins-Collins Distilleries* v. *United States*, 36 CCPA 88, C.A.D. 403.

At the outset, it should be noted that the internal revenue regulations cited to us by the plaintiff, in its brief (pp. 4–7), are not appli-

cable to the instant case. The involved merchandise was imported in June and August 1958. The regulations cited to us were not adopted until after March 24, 1960, the date when they first appeared in the Federal Register in preliminary form. (25 F.R. 2487.) Furthermore, in an interoffice memorandum issued by the gauger to the collector, under date of May 22, 1959, and attached to the official papers in entry No. 9286, it is stated that the hydrometer gauging was performed in accordance with the requirements of the Gauging Manual of 1950. This manual, as effective during the period of the instant importations, is set forth in 26 CFR, 1958 edition, part 186 (part 186, Internal Revenue Regulations [revised as of January 1, 1958]), and is made applicable to collectors of customs in the assessment of internal revenue taxes on distilled spirits imported in barrels, kegs, or similar containers, by 19 CFR, 1953 edition, section 16.2(b) (section 16.2(b), Customs Regulations of 1943, as amended). Section 186.10 of the Gauging Manual of 1950 states:

Hydrometers and thermometers furnished at Government expense shall be used by internal revenue officers for determining the alcoholic strength of distilled spirits where the solid content is negligible. The alcoholic strength of liquors to which blending materials have been added, or which contain solids in solution in excess of 0.6 gram per 100 milliliters will be determined by use of an approved ebulliometer, small still, or other instrument or method authorized by the Director, Alcohol and Tobacco Tax Division, Internal Revenue Service, Treasury Department, in accordance with provisions of Part 230 or Part 235 of this chapter.

It appears, therefore, in view of the foregoing, that section 186.10, *supra*, constitutes the basis for the plaintiff's argument that only when the nonvolatile matter in rectified spirits exceeds 0.6 gram per 100 milliliters *must* the distillation method be used in determining proof (plaintiff's brief, p. 5).

In the case of *Cummins-Collins Distilleries* v. *United States, supra,* which is cited to us by the defendant, the merchandise there involved consisted of rum, imported in barrels from Cuba and covered by warehouse entries. Upon entry, the rum was proofed by the customs gauger with a hydrometer and thermometer. Upon withdrawal of the rum for consumption, the collector caused samples to be transmitted to a customs laboratory where they were tested for proof by means of the distillation method. The distillation proofs were two or three points per wine gallon higher that the hydrometer proofs. Liquidation of duties and internal revenue taxes on the rum were made by the collector on the basis of the distillation proofs, and the importer protested the assessments. Liquidation was sustained by the courts under 19 U.S.C.A., section 1001, paragraph 811 (paragraph 811, Tariff Act of 1930), which reads:

Each and every gauge or wine gallon of measurement shall be counted as at least one proof gallon; and the standard for determining the proof of brandy

and other spirits or liquors of any kind when imported shall be the same as that which is defined in the laws relating to internal revenue. The Secretary of the Treasury, in his discretion, may authorize the ascertainment of the proof of wines, cordials, or other liquors and fruit juices by distillation or otherwise, in cases where it is impracticable to ascertain such proof by the means prescribed by existing law or regulations.

In the *Cummins-Collins* case, the Court of Customs and Patent Appeals construed the language of paragraph 811, *supra*. The court concluded that its provisions were complete in themselves and did not require any regulations for its enforcement, that paragraph 811, *supra*, would be superior to any regulations which were inconsistent with its provisions, and that it was conclusive of the collector's action in accepting the distillation proofs ascertained by the customs laboratory as the legal gauge for duty and tax purposes.

We are of the opinion that paragraph 811, *supra*, as interpreted by our appeals court in the *Cummins-Collins* case, is controlling in the instant case on the question of the legal gauge of the involved merchandise to the extent that section 186.10, *supra*, is inconsistent with executive authorization stemming from paragraph 811, *supra*, and supporting the distillation proofs returned at bar. Consequently, the only questions which remain to be considered are what authorization covered the merchandise at bar, and whether such authorization was followed in connection with the gauging of the involved merchandise.

It will be observed from the lower court opinion in the *Cummins-Collins* case (20 Cust. Ct. 93, 97, C.D. 1090) that Treasury authorization for gauging of alcoholic beverages by the distillation method as of the period there involved is contained in Bureau Circular Letter No. 2284, dated January 28, 1942, the pertinent part of which reads:

Since it is not always feasible to determine whether brandy and other distilled spirits contain saccharin or other nonvolatile substances, samples of such spirits, imported in barrels or similar packages, should be sent to the customs laboratory for a report as to the true proof. This will be unnecessary, however, in the case of any brand of imported distilled spirits which is known from recent laboratory tests to show no difference between its apparent and true proof.

The effect of this authorization was to virtually subject all importations of alcoholic beverages to the distillation method of ascertaining proof, except such as were known from previous laboratory analysis not to contain nonvolatile substances to a degree which would affect the proof. Nothing quite so broad in scope by way of Treasury authorization is apparent from the instant record, or even contended for by the defendant in support of the collector's determination, which, of course, suggests that there has been a change in the practice permitted under paragraph 811, *supra*, since the period reflected in the *Cummins-Collins* case. Here, the parties are at odds over the amount of solids which must be present in the imported liquor before the importation

must be subjected to distillation proofing—the plaintiff claiming that the solids must exceed 0.6 gram per 100 milliliters before distillation proofing is required, and the defendant claiming that the solids must only exceed 0.2 gram per 100 milliliters before distillation proofing is mandatory.

The basis for the collector's action is revealed in the record where, in his statutory response to the filing of the protests, he affirmed his decision and stated the basis of his affirmation as follows: "Customs treatment of sampling, gauging, chemical analysis, and computation of proof gallonage adhered to instructions in B.C.L. 3001, 10/14/57, and supplements." Bureau of Customs Circular Letter No. 3001, dated October 14, 1957, which was relied upon by the collector in liquidation of the involved entries, was issued by the Commissioner of Customs and is entitled "Sampling and Gauging Distilled Spirits in Bulk." The letter supersedes Bureau of Customs Circular Letter No. 2458, dated July 1, 1944, its appended Official Sampling Method No. 18, and its three supplements, which were issued to collectors of customs and others concerned. Pertinent parts of the letter read as follows:

> The attached Official Sampling Method No. 18 (Revised) contains instructions for sampling importations of distilled spirits in barrels, . . . when it is necessary to determine the true proof by distillation because of the presence of an appreciable quantity of nonvolatile matter. You shall apply the procedures outlined in Method No. 18 (Revised) in appropriate cases to all entries received on and after the effective date of this letter and to prior entries where, in the opinion of the collector, it is practicable.

> \* \* \* \* \* \* \*

> Each laboratory report on a composite sample of distilled spirits shall contain a statement of the amount of nonvolatile matter present in the sample. If the amount of nonvolatile matter in the sample does not exceed 0.200 gram per 100 milliliters, no statement of proof is to be shown on the laboratory report and the gauger's proof for each package shall be used in determining the number of proof gallons. If the amount of nonvolatile matter present in the sample exceeds 0.200 gram per 100 milliliters, the laboratory report shall show, in addition to the nonvolatile matter, the true proof by distillation.

> When the true proof by distillation is shown on the laboratory report, this result, in tenths of a degree proof, shall be used in the computation of the proof gallons of the sampling unit. . . .

This letter constitutes the authorization contemplated by the provisions of paragraph 811, *supra*, and to the extent that the instructions contained therein conflict with the requirements of section 186.10, *supra*, these instructions take precedence over the latter requirements. The evidence of record, including the testimony of the Government chemist, shows compliance with the Bureau's instructions in every respect and indicates that the importer was promptly notified of the results of the laboratory analyses on the composite samples.

In its brief (pp. 6–7), plaintiff is critical of the samples taken under entry No. 9286 for laboratory analysis, contending that a representative sample was not taken from all of the barrels covered by that entry. The record indicates that a "Composite sample submitted was drawn from 9 barrels spread thru the range of 28." In our opinion, the sample taken constitutes ample examination of the merchandise covered by entry No. 9286, and did not conflict with the sampling instructions governing the collector's actions. Furthermore, plaintiff cites no authority, and we know of none, under which the Government is required to sample all of the merchandise covered by an entry. *Spatola Wines, Inc.* v. *United States*, 32 Cust. Ct. 189, 191, C.D. 1602. Under the evidence, the collector's reliance upon the distillation proofs as the legal gauge was proper and must be sustained. For the reasons stated, the protests are overruled.

Judgment will be entered accordingly.