(C.D. 3967)

COHN HALL MARX CO., DIV. OF UNITED MERCHANTS & MANUFACTURERS, INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided February 12, 1970)

*Sharretts, Paley, Carter & Blauvelt* (*Howard Clare Carter* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Arthur H. Steinberg*, trial attorney), for the defendant.

Before RAO and FORD, Judges, and WILSON, Senior Judge

WILSON, Judge: These two protests were consolidated for trial. The imported fabric is described in the invoices as follows:

| Protest No. | Entry No. | Date of Entry | Merchandise | Style No. | Invoice No. |
|---|---|---|---|---|---|
| 64/11496 | 1047542 | 6/21/61 | Ramie & Spun Rayon Piece Goods, Brushed Gingham, Yarn Dyed. | 1755 | S6541/F8044. |
| 64/11496 | 1047542 | 6/21/61 | Rayon Loop Gingham Piece Goods, Yarn Dyed, Rayon 100%. | 1634 | S6539/F8045. |
| 64/11496 | 1047542 | 6/21/61 | Rayon Loop Gingham Piece Goods, Yarn Dyed, Rayon 100%. | 1634 | S6532/F8045. |
| 64/11496 | 700720 | 7/ 5/61 | Ramie & Spun Rayon Piece Goods, Brushed Gingham, Yarn Dyed. | 1755 | S6579/8044. |
| 64/15614 | 1022995 | 5/25/61 | Ramie & Spun Rayon Piece Goods, S.F. & Ramie Blended, Brushed Gingham, Yarn Dyed. | 1755 | S6527/F8044. |

The fabric was sold to plaintiff by Kinsho-Mataichi Co., Ltd. of Osaka, Japan, hereinafter referred to as Kinsho, and was entered at the port of New York.

The collector of customs classified and assessed *all* of the merchandise under paragraph 1306 of the Tariff Act of 1930, as modified by T.D. 52739, which reads as follows:

> "Woven fabrics in the piece, wholly or in chief value of rayon or other synthetic textile, not specially provided for, whether or not Jacquard-figured, valued not over $4 per pound_____ 25¢ per lb. and 22½¢ ad val."

Plaintiff's protests claim that this merchandise is in chief value of ramie and should be assessed under paragraph 1010 of said tariff act, as modified by T.D. 51802, which reads as follows:

> "Woven fabrics, not including articles finished or unfinished, of flax, hemp, ramie, or other vege-table fiber, except cotton, or of which these sub-stances or any of them is the component material of chief value, not specially provided for_____ 10% ad val."

The primary question is whether, on the record herein, the imported fabric is in chief value of rayon as determined by the collector or is in chief value of ramie as claimed by the importer. Because of objections to qualifications of witnesses and motions to strike their testimony, it is necessary to pass upon those matters.

The evidence consists of five executed commissions to take depositions in Japan, together with direct and cross-interrogatories marked exhibits 1, 2 and 3, and supplemental direct interrogatories marked exhibits 4 and 5, which were received in evidence with answers thereto, and seriatim copies thereof, marked respectively exhibits 1A, 2A, 3A, 4A, and 5A. The commission numbers and witnesses in the foregoing exhibits are as follows:

| Exhibit No. | Commission No. | Witness |
|---|---|---|
| 1 and 1A_____ | 1508 | TOKUZO TSUKAMOTO. |
| 2 and 2A_____ | *1509 | TETSUSHI SUZUKI.* |
| 3 and 3A_____ | 1510 | YOSHIKAZU AKITA. |
| 4 and 4A_____ | 1512 | TOKUZO TSUKAMOTO. |
| 5 and 5A_____ | *1513 | TETSUJI SUZUKI.* |

The defendant made numerous objections to questions and/or answers in the direct interrogatories or supplemental interrogatories, and also moved to strike. After reviewing the evidence, the court believes that justice will be best served by overruling all of the objections and denying all of the motions to strike, which is the court's order, and then to consider all of the questions and answers on their respective merits as to weight, which will be done herein.

Before considering the question of chief value, it is necessary to first consider the qualifications of the witnesses and the weight to be accorded to their testimony.

TSUKAMOTO testified that he has been associated with "Mitsubishi" for 17 years but indicates that for only 7 years he held the position of "Chief of the Export Textile Section" which latter period included 1960 and 1961. He does *not* disclose his duties during said 7-year period or his duties for the 10 years prior thereto. He stated the cost per pound of 2 denier, 2-inch cut, curl dull rayon fiber as Yen 85 but there is *no* indication where that figure came from or how he ascertained it. He stated that his company purchased 24/s ramie rayon blended yarn from Kinsho and used it as weft. Then his company made 30/2 yarn which was used as warp, thus making the cloth. *Nothing of record shows his familiarity with these procedures to produce fabric.* In supplemental interrogatories, he asserts it was *impossible to determine* on October 14, 1966, the *cost of the wood pulp or cost of the process in 1960*, and alleges that 1.09318 of wood pulp is required to make one pound of yarn, and that 1.003 pounds of viscose rayon staple are used to produce 1 pound of 30/2 yarn used in the warp of the cloth. He also stated that spinning is the process used to produce the finished yarn,

---

*These commissions were executed by the same person though the first name is spelled differently.

and that the cost of the viscose rayon was Yen 85 and the cost of processing was Yen 30 per pound, "at that time." *The record is barren of evidentiary facts warranting a conclusion that he was knowledgeable in respect to the foregoing or as to the source of his information as to costs.*

TSUKAMOTO's statements concerning use and cost of materials and manufacturing processes are not supported by any evidence of his knowledge of these matters. The record fails to disclose any personal familiarity of this witness with his company's records and books and its manufacturing procedures.

The plaintiff, brief page 8, asserts that TSUKAMOTO was clearly qualified under the rule admitting business records, citing "The Law of Evidence, Ninth Edition by Jerome Prince at page 234" and 28 U.S.C., section 1732 (a). The latter statute provides for admittance as evidence of:

> "* * * any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence * * * if made in regular course of any business * * *."

It also provides that:

> "All other circumstances of the making of such writing or record including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility."

The plaintiff is precluded from relying upon the foregoing rule for admittance of records, commonly known as the "shop-book rule" for *no such records were offered in evidence.*

While the court has admitted the evidence introduced through TSUKAMOTO, it is held to be negative in character. The witness was, as hereinbefore stated, without personal familiarity with records or technical matters, and his testimony *in toto cannot* overcome the presumption of correctness attaching to the collector's classification or establish the claimed classification.

SUZUKI testified in substance in Commission No. 1509, exhibit 2 that in November 1965 he was Chief of the Business Section in Osaka of Boseki having held that position for 3 years, and that in 1960 and 1961 he was manager of the Osaka office; that altogether he had been employed by Boseki for 17 years which included the above periods (his specific duties during those periods are *not* disclosed) ; that his company employed a person who specialized in cost accounting and made monthly reports which the witness reviewed thus becoming personally familiar with his company's cost accounting system. That record, he states, accurately reflects the cost of material purchased and the cost

and expenses at each stage of processing materials into finished or semifinished products. He is, therefore, testifying on the basis of hearsay testimony. According to his company's records, he states (without showing his personal familiarity therewith) his company produced and sold certain items at certain prices. His familiarity with the books or records, not shown to have been produced by himself or under his supervision, does not establish his qualifications. When asked whether, in arriving at his answers, he consulted "any books, records, or documents," he replied:

> "We were asked by Kinsho Mataichi Company in connection with this case and I wrote a letter addressed to Kinsho Mataichi Company regarding this matter, so I remember."

When asked to "identify by name any books, records or documents that you consulted," he replied:

> "I received a questionnaire from Mataichi Company, so I wrote a reply to this questionnaire, but I did not refer to any material."

Suzuki testified on October 26, 1966, in Commission No. 1513, exhibit 5, concerning the cost and weight of certain material (that 0.4125 pound of rayon staple fiber was used to produce 1 pound of blended yarn; this has reference to the 0.667 pound of ramie in 2-inch lengths to make 1 pound of blended yarn; that the actual loss in degumming was 60 percent and the actual cost of the ramie was exactly Yen 233.34; that whereas he testified on direct interrogatory that approximately Yen 60 per pound of ramie was carded, combed, picked up and cut into 2-inch lengths, he stated that the actual cost was Yen 60 per pound as shown by the records of his company). He does not, however, claim any personal familiarity with the records except a review of so-called cost accounting reports, *not the books or records*. His testimony is not substantial or probative and is not based upon his nebulous qualifications. This therefore, *in toto*, is insufficient to overcome the presumption of correctness attaching to the collector's classification or to establish the claimed classification.

Mr. Akita testified in substance on November 8, 1965 and November 30, 1965 in Commission No. 1510, exhibit 3, that in 1960 and 1961 he was a director and manager of the Textile Department of Kinsho having been associated with that company for 34 years; that his company received an order on January 16, 1961 from plaintiff for a quantity of resin finished woven ramie and spun rayon yarn dyed brushed gingham piece goods in pieces 36.5 inches wide and 20 to 39 yards in length, style No. 1755 in assorted colors to be woven from 30/2 rayon yarn for the warp threads and a blended yarn 24/2 of 60 percent ramie and 40 percent rayon in the weft, the warp to contain 52 threads

per square inch and the weft to contain 42 threads per square inch. He there states that his company then purchased a blended yard 24/– of 60 percent ramie and 40 percent rayon from Boseki and sold it to Mitsubishi and purchased from that company the dyed, woven, resin and brushed goods packed in export cases (this refers to the 84 cases referred to by Tsukamoto) ; that his company sold the finished goods (fabrics) to plaintiff. The personal familiarity of this witness with the foregoing facts is *not* shown. His qualifications and duties in 1960–1961 are *not* disclosed. He indicates no information as to the source for his testimony.

Under cross-interrogatories in Commission No. 1510, Akita testified in answer to a question whether he consulted any books, records or documents in arriving at his answers, and if so to name them, he stated:

> "I consulted a draft copy of the interrogatories of this deposition which I received from the Tokyo Branch of Cohn, Hall, Marx Company, Division United Merchandise & Manufacturers, Incorporated, and also a copy of my replies to these questions signed by myself."

The court finds no evidence directed specifically to protest 64/11496, entry 1047542, of 6/21/61 wherein the invoice refers to "Rayon Loop Gingham Piece Goods, Yarn Dyed, *Rayon 100%*." [Emphasis added.]

The testimony of the three witnesses, considered separately or together, fails to furnish competent and satisfactory evidence to sustain plaintiff's burden of proof. The evidence relating to books and records is entirely inadequate.

The plaintiff contends that "The evidence establishes beyond a reasonable doubt that ramie is the component material of chief value." (Brief page 8.)

In *Chaffee & Co.* v. *United States*, 85 U.S. 516 (1874), the Court stated in effect that the books of the trader or merchant must "be determined by the rule which governs the admissibility of entries made by private parties in the ordinary course of their business," which requires "not merely that they shall be contemporaneous with the facts to which they relate, but shall be made by parties having personal knowledge of the facts, and be corroborated by their testimony, if living and accessible, or by proof of their handwriting, if dead, or insane, or beyond the reach of the process or Commission of the court."

Note also *General Wool Co., Inc., et al.* v. *United States*, 56 Cust. Ct. 730, R.D. 11177 (1966), affirmed *General Wool Co., Inc., et al.* v. *United States*, 60 Cust. Ct. 970, A.R.D. 240 (1968), citing *United States* v. *Philipp Wirth et al., Philipp Wirth et al.* v. *United States*, 24 CCPA 188, 193, T.D. 48654 (1936), and citing *United States* v.

*Brown & Co.,* 4 Ct. Cust. Appls. 102, T.D. 33374 (1913). The defendant contends that

> "The Collector's classification of the fabric at bar under paragraph 1306, as modified, raised the presumption that the component material of chief value was rayon, and that determination has not been shown to be erroneous by competent and convincing evidence."

This we believe is an accurate statement of the situation.

In *United States (Index Industrial Corp., Party in Interest)* v. *National Starch Products, Inc.,* 50 CCPA 1, C.A.D. 809 (1962), the court stated that its decision is controlled by the long established principle that the burden of proof is on a protestant to show not only that the collector's classification is wrong but also to establish the classification of the merchandise in issue which is asserted by the protestant to be the proper classification. The decision refers to the rule which appears to have its origin in *Arthur* v. *Unkart,* 96 U.S. 118 (1878), and quotes from *Atlantic Aluminum & Metal Distributors, Inc.* v. *United States,* 47 CCPA 88, C.A.D. 735 (1960), wherein the court states that:

> "It is axiomatic that a presumption of correctness attaches to the collector's classification. *Lowenthal Trimming Corp.* v. *United States,* 39 CCPA 149, C.A.D. 477 [1952]; *McKesson & Robbins, Inc.* v. *United States,* 27 CCPA 157, C.A.D. 77 [1939]. To overcome this presumption, the protestant has the burden of proving not only that the collector erred, but also that the classification urged by the protestant is correct. *W. T. Grant Company* v. *United States,* 38 CCPA 57, C.A.D. 440 [1950]; *United States* v. *Good Neighbor Imports, Inc.,* 33 CCPA 91, C.A.D. 321 [1945]; *United States* v. *Fred Gretsch Mfg. Co., Inc.,* 28 CCPA 26, C.A.D. 120 [1940]."

In the said *National Starch Products, Inc.* case, *supra,* the court also stated:

> "Unless there is substantial evidence in the record to establish the propriety of the protestant's asserted classification of the imported merchandise, the protest must be overruled and it is unnecessary to consider whether or not the collector's classification is wrong. *United States* v. *H. V. Albrecht, etc.,* 27 CCPA 112, 117, C.A.D. 71 [1939]; *W. T. Grant Company* v. *United States,* 38 CCPA 57, C.A.D. 440 [1950]; *United States* v. *Cody Manufacturing Co., Inc., et al.,* 44 CCPA 67, 74, C.A.D. 639 [1957]; *Davies et al.* v. *Miller et al.,* 91 F. 647 [1898]."

The principle of the presumption of the correctness of the government's classification has been consistently followed by the Customs Court and the Court of Customs and Patent Appeals and additional citations are deemed unnecessary.

In the case at bar, the presumption is that the imported fabric is in chief value of rayon under paragraph 1306, *supra*, as classified by the collector. Hence, it was importer's burden, in view of the cited cases herein, to establish by competent and substantial evidence, that the imported fabric was in chief value of ramie as provided for in paragraph 1010, *supra*, as claimed.

A consideration of the entire record does not disclose sufficient competent evidence to warrant the conclusion that the importer has made a case which warrants consideration of the question of chief value. Therefore, it is not necessary to go into the testimony relating to that issue.

The importer has failed to make a *prima facie* case, and its protests must be overruled.

Judgment will be entered accordingly.